IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

CHOOSECO LLC, )
 )
                    *Plaintiff*, )
 )
*v.* ) Civil Action No. 2:19-cv-00008-WKS
 )
NETFLIX, INC., )
 )
                    *Defendant*. )
 )

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

GRAVEL & SHEA PC

Robert B. Hemley, Esq.
76 St. Paul St., 7th Floor, P.O. Box 369
Burlington, VT  05402-0369
Telephone: (802) 658-0220
rhemley@gravelshea.com


BALLARD SPAHR LLP

Seth D. Berlin (admitted *pro hac vice*)
Paul Safier (admitted *pro hac vice*)
Catherine Seibel (admitted *pro hac vice*)
1909 K Street, N.W., 12th Floor
Washington, DC  20006-1157
Telephone: (202) 508-1122
berlins@ballardspahr.com
safierp@ballardspahr.com
seibelc@ballardspahr.com

*Counsel for Defendant Netflix, Inc.*


Date:  March 21, 2019

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................1

FACTUAL BACKGROUND ..........................................................................................2

A.    Chooseco's Books, the CHOOSE YOUR OWN ADVENTURE Mark, and
      the "Rounded Color Borders" ..............................................................................2

B.    Netflix and *Black Mirror: Bandersnatch* ...........................................................3

C.    Chooseco's Claims ................................................................................................5

STANDARD OF REVIEW .............................................................................................7

ARGUMENT ..................................................................................................................8

I.    CHOOSECO'S LANHAM ACT CLAIMS FAIL AS A MATTER OF LAW .................8

      A.    Chooseco's Claims Arising Out of the Film's Reference to a "Choose
            Your Own Adventure" Book Fail as a Matter of Law .............................................9

            1.    The First Amendment Precludes Chooseco's Claims ..................................9

                  a.    The Alleged Use Is Artistically Relevant ......................................12

                  b.    The Alleged Use Is Not Explicitly Misleading .............................12

            2.    Netflix's Use of the Phrase is a Descriptive Fair Use and
                  Therefore Non-Actionable ........................................................................15

            3.    Applying the *Polaroid* Factors Confirms The Absence of
                  Confusion ..................................................................................................19

            4.    Chooseco's Dilution Claim Fails for Two Additional Reasons ...............23

      B.    Chooseco Has No Viable Claim for Infringement of its Trade Dress ..................25

II.   CHOOSECO'S COMMON LAW UNFAIR COMPETITION CLAIM FAILS
      AS A MATTER OF LAW ......................................................................................27

III.  THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH
      PREJUDICE .......................................................................................................28

CONCLUSION .............................................................................................................29

i

## TABLE OF AUTHORITIES

**Cases**                                                                                                **Page(s)**

*Allied Interstate LLC v. Kimmel & Silverman P.C.*,
    2013 WL 4245987 (S.D.N.Y. Aug. 12, 2013) ........................................................................24

*Arista Records LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) ..............................................................................................7

*Arnold v. ABC, Inc.*,
    2007 WL 210330 (S.D.N.Y. Jan. 29, 2007) .................................................................16, 17

*Arrow Productions, Ltd. v. The Weinstein Co.*,
    44 F. Supp. 3d 359 (S.D.N.Y. 2014)...........................................................................13, 14, 27

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................7, 14

*Bubble Genius LLC v. Smith*,
    239 F. Supp. 3d 586 (E.D.N.Y. 2017) ..............................................................................25

*Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*,
    70 F.3d 267 (2d Cir. 1995).........................................................................................15, 18

*Cher v. Forum Int'l, Ltd.*,
    692 F.2d 634 (9th Cir. 1982) ..........................................................................................26

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp., Inc.*,
    886 F.2d 490 (2d Cir. 1989)......................................................................................... *passim*

*Cosmetically Sealed Indus., Inc. v. Cheesebrough-Pond's USA Co.*,
    125 F.3d 28 (2d Cir. 1997)..........................................................................................16, 17

*Cummings v. Soul Train Holdings, LLC*,
    67 F. Supp. 3d 599 (S.D.N.Y. 2014)................................................................................26

*Deere & Co. v. MTD Prods., Inc.*,
    41 F.3d 39 (2d Cir. 1994).........................................................................................11, 14

*Dessert Beauty, Inc. v. Fox*,
    568 F. Supp. 2d 416 (S.D.N.Y. 2008)...............................................................................18

*EMI Catalogue P'ship v. Hill Holiday, Connors, Cosmopulos Inc.*,
    228 F.3d 56 (2d Cir. 2000)..........................................................................................8, 22

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
    547 F.3d 1095 (9th Cir. 2008) ........................................................................................12

*Fortres Grand Corp. v. Warner Bros. Entm't Inc.*,
    947 F. Supp. 2d 922 (N.D. Ind. 2013) ................................................................. 11

*FragranceNet.com, Inc. v. FragranceX.com, Inc.*,
    493 F. Supp. 2d 545 (E.D.N.Y. 2007) ................................................................. 29

*Girl Scouts of the U.S.A. v. Bantam Doubleday Dell Publ'g Grp., Inc.*,
    808 F. Supp. 1112 (S.D.N.Y. 1992) ................................................................... 10

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*,
    590 F. Supp. 2d 625 (S.D.N.Y. 2008) ........................................................... 13, 15

*Gruner + Jahr USA Publ'g v. Meredith Corp.*,
    991 F.2d 1072 (2d Cir. 1993) ........................................................................... 20

*Guthrie Healthcare Sys. v. ContextMedia, Inc.*,
    826 F.3d 27 (2d Cir. 2016) ............................................................................... 19

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010) ........................................................................... 25

*Hormel Foods Corp. v. Jim Henson Prods., Inc.*,
    73 F.3d 497 (2d Cir. 1996) .......................................................................... 20, 23

*IMS Health Inc. v. Sorrell*,
    630 F.3d 263 (2d Cir. 2010) ............................................................................. 25

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
    58 F.3d 27 (2d Cir. 1995) ................................................................................... 8

*Kelly-Brown v. Winfrey*,
    717 F.3d 295 (2d Cir. 2013) ........................................................................ 15, 16

*L.L. Bean, Inc. v. Drake Publishers, Inc.*,
    811 F.2d 26 (1st Cir. 1987) ............................................................................. 9, 10

*Lane v. Random House*,
    985 F. Supp. 141 (D.D.C. 1995) ....................................................................... 26

*Lang v. Ret. Living Publ'g Co.*,
    949 F.2d 576 (2d Cir. 1991) ............................................................................. 22

*Libman Co. v. Vining Indus., Inc.*,
    69 F.3d 1360 (7th Cir. 1995) ........................................................................... 27

*Lombardo v. Dr. Seuss Enters., L.P.*,
    279 F. Supp. 3d 497 (S.D.N.Y. 2017) ............................................................... 26

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
   156 F. Supp. 3d 425 (S.D.N.Y. 2016)..............................................................18, 20

*Louis Vuitton Malletier, S.A. v. Warner Bros. Entm't Inc.*,
   868 F. Supp. 2d 172 (S.D.N.Y. 2012).................................................2, 11, 12, 13

*Macia v. Microsoft Corp.*,
   335 F. Supp. 2d 507 (D. Vt. 2004)...............................................................28

*Marcinkowska v. IMG Worldwide, Inc.*,
   342 F. App'x 632 (Fed. Cir. 2009) ..............................................................8

*Mattel, Inc. v. MCA Records, Inc.*,
   296 F.3d 894 (9th Cir. 2002) ......................................................15, 24, 25

*Medina v. Dash Films, Inc.*,
   2016 WL 3906714 (S.D.N.Y. July 14, 2016) ......................................11, 13, 28

*Metrano v. Twentieth Century Fox Film Corp.*,
   2009 WL 10672576 (C.D. Cal. July 16, 2009) ......................................11

*Nabisco, Inc. v. Warner-Lambert Co.*,
   220 F.3d 43 (2d Cir. 2000)...........................................................13

*Naked Cowboy v. CBS*,
   844 F. Supp. 2d 510 (S.D.N.Y. 2012)..............................................16, 17

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
   602 F.3d 57 (2d Cir. 2010)..............................................................2

*Playtex Prods., Inc. v. Georgia-Pacific Corp.*,
   390 F.3d 158 (2d Cir. 2004)............................................................17

*Polaroid Corp. v. Polarad Elecs. Corp.*,
   287 F.2d 492 (2d Cir. 1961)........................................13, 19, 22, 23

*Reese Publ'g Co. v. Hampton Int'l Commc'ns, Inc.*,
   620 F.2d 7 (2d Cir. 1980)................................................................19

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989)..................................................... *passim*

*Rudavsky v. City of S. Burlington*,
   2018 WL 4639096 (D. Vt. Sep. 27, 2018)...........................................7

*Sherwood 48 Assocs. v. Sony Corp. of Am.*,
   76 F. App'x 389 (2d Cir. 2003) ..................................................27

*SMJ Grp., Inc. v. 417 Lafayette Rest. LLC*,
    439 F. Supp. 2d 281 (S.D.N.Y. 2006)...................................................25

*Something Old, Something New, Inc. v. QVC, Inc.*,
    1999 WL 1125063 (S.D.N.Y. Dec. 8, 1999) .........................................18

*Sporting Times, LLC v. Orion Pictures, Corp.*,
    291 F. Supp. 3d 817 (W.D. Ky. 2017)...................................................11

*Stewart Surfboards, Inc. v. Disney Book Grp., LLC*,
    2011 WL 12877019 (C.D. Cal. May 11, 2011) ...............................11, 29

*Telebrands Corp. v. Del Labs., Inc.*,
    719 F. Supp. 2d 283 (S.D.N.Y. 2010)....................................................3

*Tiffany (NJ) Inc. v. eBay Inc.*,
    600 F.3d 93 (2d Cir. 2010).....................................................................24

*Twentieth Century Fox Television v. Empire Distrib., Inc.*,
    875 F.3d 1192 (9th Cir. 2017) .........................................................12, 26

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*,
    996 F.2d 1366 (2d Cir. 1993)................................................................12

*Wonder Labs, Inc. v. Procter & Gamble Co.*,
    728 F. Supp. 1058 (S.D.N.Y. 1990)......................................................18

*Yankee Publ'g Inc. v. News Am. Publ'g Inc.*,
    809 F. Supp. 267 (S.D.N.Y. 1992) ................................................ *passim*

*Yurman Design, Inc. v. PAJ, Inc.*,
    262 F.3d 101 (2d Cir. 2001)..................................................................27

**Statutes**

15 U.S.C. § 1064.......................................................................................19

15 U.S.C. § 1114.........................................................................................7

15 U.S.C. § 1115.......................................................................................16

15 U.S.C. § 1125.....................................................................7, 16, 23, 24

15 U.S.C. § 1127.........................................................................................8

Vt. Stat. Ann. § 1041(i)(1).......................................................................28

**Other Authorities**

U.S. Const. amend. I .................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6) ............................................................................. 7

Fed. R. Evid. 201 ...................................................................................... 3

4 McCarthy on Trademarks & Unfair Competition § 24.122 ....................... 24, 25

## PRELIMINARY STATEMENT

*Black Mirror: Bandersnatch* is part of the *Black Mirror* anthology, a dystopian series exploring the ills of modern technology, with its title referring to the screens of our electronic devices and the dark side of humanity often reflected in that technology.  Set in 1984, *Bandersnatch* chronicles its central character's struggles to develop a videogame using an interactive storytelling technique for a fictional videogame company called Tuckersoft. *Bandersnatch* immerses viewers in the very interactive technology its story explores, employing branching narratives that allow viewers to make decisions that determine the story's path, leading to multiple endings and trillions of permutations.

The original Complaint filed by plaintiff Chooseco LLC ("Chooseco") challenged only a brief snippet of dialogue, in which the protagonist describes the fictitious book on which his videogame is based (both also titled "Bandersnatch") as a "Choose Your Own Adventure" book, a reference to the book's narrative device.  Chooseco alleged that by using this common – and accurate – phrase to describe the narrative structure of the "Bandersnatch" book, Defendant Netflix, Inc. ("Netflix") infringed Chooseco's trademark rights.

In its Amended Complaint, Chooseco also alleges that Netflix infringed its trade dress because the fictional Tuckersoft game company uses "rounded color borders" on its videogame packaging that Chooseco claims is similar to borders it uses on its book covers.  This newly-minted claim is even weaker than Chooseco's original claims:  because there is nothing distinctive about Chooseco's borders and consumers do not associate them with Chooseco, they are not protectable trade dress, and, regardless, its borders are markedly different from those used on "Tuckersoft" videogames.

1

Chooseco's Amended Complaint fails as a matter of law for numerous reasons, including: the broad First Amendment protection afforded artistic works such as *Bandersnatch*; the doctrine of descriptive fair use embodied in the Lanham Act; and the complete absence of any likelihood of consumer confusion, which is the *sine qua non* of a Lanham Act claim. Chooseco's Amended Complaint should therefore be dismissed with prejudice.

## FACTUAL BACKGROUND[1]

**A. Chooseco's Books, the CHOOSE YOUR OWN ADVENTURE Mark, and the "Rounded Color Borders"**

"Chooseco is the current publisher of . . . CHOOSE YOUR OWN ADVENTURE books." Am. Compl. ¶ 11. "Each CHOOSE YOUR OWN ADVENTURE book is written in the second person." *Id.* ¶ 13. Thus, "[t]he reader acts as the story's protagonist and makes choices to determine the narrative's plot and ending. The reader is directed to a different page in the book depending on the choice he or she has made. There are multiple endings at various points that a reader may land on based on the choices he or she makes." *Id.* ¶ 13. The "target demographic" for the books is "children and young adults between seven and fourteen years old with reading levels of second through eighth grade." *Id.* ¶¶ 14-15.

Chooseco registered a trademark for the "word mark CHOOSE YOUR OWN ADVENTURE." *Id.* ¶ 1. Although the "series was widely read in the 1980s and 1990s," *id.* ¶ 14, and Chooseco claims that its marketing strategy "use[s] the hook of nostalgia to interest

---

[1] For purposes of this motion only, Netflix accepts, as it must, Chooseco's allegations as true. The Court may also properly consider the film at issue, because it is "referred to in the complaint and . . . integral to [the] claims." *Louis Vuitton Malletier, S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 176 n.6 (S.D.N.Y. 2012) (considering DVD of film underlying trademark claims). Where Chooseco's characterization differs from the actual film, the "works themselves supersede and control contrary descriptions." *See, e.g.*, *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010). Because of the film's interactive nature, if necessary, Netflix will provide an account to the Court (and to plaintiff's counsel) to access the film.

adults who read the books when they were young in buying [the] books for their children," *id.*
¶ 15, Chooseco's mark was not registered until 2004, *id.* ¶ 16 & Ex. A.  Chooseco asserts that, in
addition to its books, it uses its mark for a board game, *id.* ¶ 17, and an e-commerce website, *id.*
¶ 19, and has granted an "option contract" to Fox to develop in-theater interactive films based on
the books, *id.* ¶ 18 & Ex. B (movie audiences will use an "app on their smartphones to vote on
what the characters will do at pivotal points in the narrative").

The covers of Chooseco's books typically "feature an illustration surrounded by a
rounded color frame," with either one or two colors, which Chooseco contends "is an element of
[its] trade dress."  *Id.* ¶ 12; *see also id.* ¶ 41 (same); *id.* ¶¶ 11-12 & Ex. B (displaying images of
covers).  Chooseco does not describe its full trade dress, claim that it has been registered (it has
not), or allege that the public associates the rounded borders uniquely with its products.  Each
Chooseco book cover also includes the words "CHOOSE YOUR OWN ADVENTURE," or the
non-English equivalent, in a banner above the rounded border frame.  *Id.* ¶¶ 11-12 & Ex. B.

**B.**     **Netflix and *Black Mirror: Bandersnatch***

"Netflix is a popular media services company that primarily offers subscription-based
digital video streaming services."  Am. Compl. ¶ 23.  Since 2010, Netflix has used the word
mark NETFLIX in connection with that activity.  NETFLIX, Reg. No. 4,953,701.[2]  "Netflix's
streaming library" includes four seasons of "*Black Mirror*, a speculative fiction anthology series
that examines the relationship between humans and technology."  Am. Compl. ¶ 25.  "*Black
Mirror: Bandersnatch* . . . is an interactive film in the *Black Mirror* anthology," and was released
on Netflix's "streaming platforms on December 28, 2018."  *Id.* ¶ 26.  Unlike a traditional film,

_____

[2] "The Court may properly take judicial notice of official records of the United States
Patent and Trademark Office."  *Telebrands Corp. v. Del Labs., Inc.*, 719 F. Supp. 2d 283, 287
n.3 (S.D.N.Y. 2010); *see also* Fed. R. Evid. 201.  A registration for the mark BLACK MIRROR
is pending.  *See* U.S. Trademark Application Serial No. 87,857,889 (filed Mar. 30, 2018).

*Bandersnatch* "viewers make choices to determine the plot and ending of the film," by "click[ing] a button at the bottom of their screen using a mouse or other controller." *Id.* ¶ 28. "The version of the film that the viewer sees depends on the choices the viewer makes." *Id.* ¶ 33.

*Bandersnatch* chronicles the efforts of "a young programmer named Stefan Butler" to develop "a videogame" for the fictitious videogame company, Tuckersoft. *Id.* ¶¶ 30, 43. His game is based on a "fictional" book titled "Bandersnatch" by "a fictional author named Jerome F. Davies." *Id.* ¶ 30. Both "Bandersnatch" the book, and the "Bandersnatch" videogame Stefan works to create, use an interactive storytelling technique similar to that of the *Bandersnatch* film. *Id.* ¶¶ 30-32. Those parallel narrative structures are used thematically – in the mold of the *Black Mirror* anthology – to explore questions of free will and the concern that people are increasingly controlled by technology.

The film's use of a branching narrative technique in which the viewer "controls" the main character's actions does not at all resemble the format used in Chooseco's children's books. While, for example, "Choose Your Own Adventure" books are "written in the second person" and "the reader acts as the story's protagonist," *id.* ¶ 13, in *Bandersnatch*, the viewer does not step into Stefan's shoes, but controls him as an outside force. At times, Stefan actively resists the commands the viewer gives him, such as when the viewer commands him to "pull on his earlobe." When Stefan ultimately becomes cognizant that his choices are being controlled, viewers are given the option to tell him he is being manipulated by a person from the future using a computer service called "Netflix."

The blurred lines between the film and the real world are expressly addressed by a character named Colin, a legendary videogame designer and Stefan's idol, who delivers a long monologue, invoking the videogame PAC-MAN, about how our choices are illusory:

4

> You know what PAC stands for?  PAC.  Program and Control.  He's Program and
> Control Man.  The whole thing's a metaphor.  All he can do is consume.  He's
> pursued by demons that are probably just in his own head.  And even if he does
> manage to escape by slipping out one side of the maze, what happens?  He comes
> right back in the other side.  People think it's a happy game.  It's not a happy game.
> It's a f--king nightmare world.  And the worst thing is?  It's real and we live in it.

This point is driven home in an ending sequence in which viewers learn that Colin's daughter, now an adult, lives in the present and is the driving force developing *Bandersnatch* for Netflix.[3]

In developing these themes, *Bandersnatch* subverts its interactive storytelling device by making the viewer's own choices illusory.  Some branches of the story return viewers to an earlier scene (including the scene at issue), effectively requiring them to make a choice they had rejected, while other scenes offer two choices that are essentially the same (*e.g.*, when Stefan considers going off his psychiatric medication, the viewer is given two options – "throw them away" or "flush them").  Unlike Chooseco's books, in which readers can successfully complete the adventure, every ending turns out horribly for Stefan.  *Bandersnatch's* "dark and violent themes" resulted in "a rating of TV-MA, which means the content is specifically designed to be viewed by adults," unlike Chooseco's books, which are aimed at children and teens.  Am. Compl. ¶ 34.

## C.    Chooseco's Claims

In its initial Complaint, Chooseco focused on a single line of dialogue early in the film, in which Stefan explains to his father that he is "always flicking backwards and forwards" in the book "Bandersnatch" because it is "a 'Choose Your Own Adventure' book," meaning that "[y]ou

---

[3] *Bandersnatch* relies on numerous other cultural reference points, including the Bandersnatch creature from Lewis Carroll's *Through the Looking-Glass* and his fabled poem "Jabberwocky," read by reflecting its text in a mirror.  Evoking Carroll's novel calls to mind an iconic world where (like one's reflection) everything is reversed and where Alice makes various choices that affect her adventure.  Similarly, *Bandersnatch*'s setting in 1984 evokes George Orwell's classic novel *1984* and its use of technology as a mind control device.

decide what your character does." *Id.* ¶¶ 31-32.  The phrase "Choose Your Own Adventure" is not used in any other scenes – nor in the film's title, its marketing, or in connection with the Netflix streaming service actually purchased by consumers – and Chooseco does not allege otherwise.

In its Amended Complaint, Chooseco also asserts that certain aspects of the fictional world of *Bandersnatch* "appropriated an element of Chooseco's trade dress." *Id.* ¶ 41. Specifically, Chooseco points to the "rounded color borders" on Tuckersoft videogame covers (including for the "Bandersnatch" game) that appear in the background in *Bandersnatch* itself, as thumbnails for the film, as well as in a U.K.-based Tuckersoft "store" and a "website" found at https://tuckersoft.net/ealing20541/history/, both of which Netflix created for the fictitious software company to complement the film. *Id.* ¶¶ 43-46.  In its brief appearance in the film, the "Bandersnatch" book cover has no border at all.

The borders used for the Tuckersoft videogames are, however, decidedly different from Chooseco's. *Compare id.* ¶ 43 (Tuckersoft covers), *with id.* ¶¶ 11-12 & Ex. B (Chooseco covers).  The borders on the Tuckersoft video games are rounded at all four corners, while the bottom corners of Chooseco's borders are squared off and indented, creating a mushroom-like shape. *Id.*  Chooseco does not allege that the borders on its book covers have acquired a "secondary meaning" such that the consuming public associates the borders with Chooseco.  Nor could it do so:  its mushroom-shaped borders, with indented bottom corners, resemble the iconic covers of Hardy Boys and Nancy Drew books, *see, e.g.*, http://hardyboys.us/hbdart.htm; https://www.lib.umd.edu/nancy/nancy-drews-legacy/the-evolution-of-nancy-drew, and the

Tuckersoft borders resemble those typical of videogames in the 1980s, *see, e.g.*,

http://www.boxequalsart.com/1980-1982%20box%20art.html.[4]

Based on the use of the phrase "Choose Your Own Adventure," Chooseco asserts

Lanham Act claims for trademark infringement under 15 U.S.C. § 1114 (Count I), dilution under

15 U.S.C. § 1125(c) (Count II), and unfair competition and false designation of origin under 15

U.S.C. § 1125(a) (Count III), as well as a claim for unfair competition under Vermont common

law (Count IV).  Chooseco also purports to base its trademark infringement claim (Count I) on

the alleged infringement of the "rounded color borders" element of its trade dress.  *See* Am.

Compl. ¶¶ 58, 62.  Because neither the passing description of the fictitious book as a "Choose

Your Own Adventure" book, nor the use of "rounded color borders" on a fictional company's

videogames, is anywhere near sufficient to state a claim, Chooseco's Amended Complaint fails

as a matter of law and should be dismissed with prejudice.

## STANDARD OF REVIEW

Rule 12(b)(6) mandates dismissal of a complaint that fails "to state a claim upon which

relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Under this standard, "only a complaint that

states a plausible claim for relief survives a motion to dismiss."  *Rudavsky v. City of S.*

*Burlington*, 2018 WL 4639096, at *2 (D. Vt. Sep. 27, 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S.

662, 679 (2009)).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  Rather, the

complaint must include sufficient "factual amplification . . . to render [its] claim[s] plausible."

*Id.* (quoting *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)) (citation omitted).

---

[4] Chooseco also alleges in passing that Netflix collects data from users, and makes certain allegations "upon information and belief" regarding how Netflix uses specific data.  Am. Compl. ¶¶ 49-51.  Chooseco fails to offer any basis for these allegations, let alone explain how, if at all, they are intended to bear on Chooseco's trademark and trade dress infringement claims.

## ARGUMENT

**I.    CHOOSECO'S LANHAM ACT CLAIMS FAIL AS A MATTER OF LAW.**

Although Chooseco alleges that, "[a]s in the CHOOSE YOUR OWN ADVENTURE series, Bandersnatch viewers make choices to determine the plot and ending of the film," Am. Compl. ¶ 28, it does not purport to assert any trademark rights over that storytelling device itself. That is for good reason.  "Trademark law is concerned with protection of the symbols, elements or devices used to identify a product in the marketplace and to prevent confusion as to its source." *EMI Catalogue P'ship v. Hill Holiday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 63 (2d Cir. 2000); *see also* 15 U.S.C. § 1127 (defining trademarks as "marks" that "identify and distinguish" the source of product in marketplace).  Trademarks thus "do not protect 'ideas,'" only "marks associated with goods or services." *Marcinkowska v. IMG Worldwide, Inc.*, 342 F. App'x 632, 636 (Fed. Cir. 2009); *see also Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc*., 58 F.3d 27, 32 (2d Cir. 1995) (same).  The *idea* of a narrative storytelling device in which readers or viewers make their own choices is not protected by trademark law.

Instead, Chooseco alleges that (a) Stefan's passing reference to the fictitious "Bandersnatch" book as a "Choose Your Own Adventure" book, *see* Am. Compl. ¶¶ 3, 31, 33, 58-59, 67, 74, and (b) Netflix's use of "rounded color borders" in connection with the fictitious Tuckersoft videogames, *see id.* ¶ 41-48, 58, infringe its trademark and trade dress rights.  But these alleged uses also do not infringe on interests protected by trademark law.  *Bandersnatch* does not use either the phrase "Choose Your Own Adventure" or rounded borders to identify Netflix's product in the marketplace or to denote its source.  The phrase "Choose Your Own Adventure" is used solely to describe a fictitious book by an imaginary author within an entertainment program that otherwise clearly identifies Netflix as its source – and the source of

the streaming service that customers actually purchase.  The "rounded color borders" are likewise used solely as part of the artwork for fictitious videogames sold by a fictional software company, not to mislead the public into believing that Chooseco is behind the fictional software company or, by extension, the *Bandersnatch* film and/or the Netflix service that streams it.

Chooseco's Lanham Act claims thus fail as a matter of law for multiple independent reasons.  First, under well-established law, the First Amendment bars trademark claims arising out of uses in artistic works in these circumstances, which ends the inquiry entirely.  Second, under the Lanham Act, a trademark owner cannot prevent others from using its mark in a purely descriptive sense, such as having a film's protagonist describe a book in which he chooses his own adventure as a "Choose Your Own Adventure" book.  Third, there is no plausible case of consumer confusion based on the use of the phrase in *Bandersnatch*.  Fourth, Chooseco cannot assert a claim for dilution because (a) Netflix did not use the phrase at issue as a mark for its *own* goods or services, as a dilution claim requires, and (b) dilution claims are available only in the context of commercial speech that proposes a commercial transaction, not for creative uses like those at issue here.  Fifth, the use of "rounded color borders" on "Tuckersoft" software cannot support a trade dress claim because, in addition to the First Amendment's restrictions, Chooseco has not registered its trade dress, has not alleged that the public identifies the borders with Chooseco, and cannot plausibly allege that Netflix's purported uses are confusingly similar given how markedly different they are.

A.   **Chooseco's Claims Arising Out of the Film's Reference to a "Choose Your Own Adventure" Book Fail as a Matter of Law.**

1.   **The First Amendment Precludes Chooseco's Claims.**

Trademark ownership does not confer the right "to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view."  *L.L. Bean, Inc. v. Drake*

*Publishers, Inc.*, 811 F.2d 26, 29 (1st Cir. 1987).  "To prevent filmmakers, novelists, painters,

and political satirists from including trademarks in their works is to cordon off an important part

of modern culture from public discourse."  *Girl Scouts of the U.S.A. v. Bantam Doubleday Dell*

*Publ'g Grp., Inc.*, 808 F. Supp. 1112, 1119 (S.D.N.Y. 1992) (citation omitted), *aff'd*, 996 F.2d

1477 (2d Cir. 1993).  Specifically, where, as here, an "unauthorized use of another's mark is part

of a communicative message and not a source identifier, the First Amendment is implicated in

opposition to the trademark right."  *Yankee Publ'g Inc. v. News Am. Publ'g Inc.*, 809 F. Supp.

267, 276 (S.D.N.Y. 1992).

It has therefore been the law in this Circuit for three decades – since the seminal case of

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) – that the use of a trademark in an artistic work

is constitutionally protected except where the use (1) "has no artistic relevance to the underlying

work whatsoever" or (2) "explicitly misleads as to the source or the content of the work."  *Id.* at

999.  In *Rogers*, actress Ginger Rogers claimed that the use of her name in the title of the Fellini

film *Ginger and Fred*, which told the story of two fictional cabaret performers who imitated

Rogers and her partner Fred Astaire, violated the Lanham Act.  *Id.* at 996.  The Court rejected

Rogers' claim, concluding that, even if "some members of the public would draw the incorrect

inference that Rogers had some involvement with the film," the "risk of misunderstanding . . .

[was] so outweighed by the interests in artistic expression as to preclude application of the

Lanham Act."  *Id.* at 1001.  The Court explained that, where trademarked material appears in an

expressive work "without any overt indication of authorship or endorsement," any risk that such

use "might implicitly suggest endorsement or sponsorship to some people is outweighed by the

danger of restricting artistic expression, *and the Lanham Act is not applicable*."  *Id.* at 999-1000

(emphasis added).

The Second Circuit has repeatedly confirmed that the *Rogers* "approach is generally applicable to Lanham Act claims against works of artistic expression," such as those asserted by Chooseco here.  *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp., Inc.*, 886 F.2d 490, 495 (2d Cir. 1989) (applying *Rogers* to trademark and cover design elements); *see also, e.g.*, *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 44 (2d Cir. 1994) (recognizing that *Rogers* applies to dilution claims).  Courts in this Circuit routinely apply *Rogers* and its progeny to grant motions to dismiss Lanham Act claims challenging artistic works, both where a trademark appears in the title as it did in *Rogers*, *see, e.g.*, *Medina v. Dash Films, Inc.*, 2016 WL 3906714, at *5-6 (S.D.N.Y. July 14, 2016) (granting motion to dismiss claim based on use of trademark in titles of music videos), and where, as here, the challenged use appears within the body of the work itself, *see, e.g.*, *Louis Vuitton*, 868 F. Supp. 2d at 183-84 (granting motion to dismiss claims based on use of Louis Vuitton trademark in film *Hangover Part II*).[5]  As Chooseco concedes that the *only* use of "Choose Your Own Adventure" in *Bandersnatch* is in the film's dialogue, *see* Am. Compl. ¶ 3, that use is constitutionally protected unless Chooseco can show that it is not artistically relevant or that it is explicitly misleading.  Chooseco cannot meet that burden.

---

[5] *Rogers* is also routinely applied outside of the Second Circuit to dismiss analogous Lanham Act claims.  *See, e.g., Sporting Times, LLC v. Orion Pictures, Corp.*, 291 F. Supp. 3d 817, 825-26 (W.D. Ky. 2017) (granting motion to dismiss Lanham Act claims based on use of plaintiff's trademark for newspaper in film and trailers for film); *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 947 F. Supp. 2d 922, 933-34 (N.D. Ind. 2013) (granting motion to dismiss Lanham Act claims based on use of trademarked name "Clean Slate" in film *The Dark Knight Rises* to refer to product of fictional corporation), *aff'd*, 763 F.3d 696 (7th Cir. 2014); *Stewart Surfboards, Inc. v. Disney Book Grp., LLC*, 2011 WL 12877019, at *8 (C.D. Cal. May 11, 2011) (granting motion to dismiss trademark claim based use of image of plaintiff's surfboard on back cover of book "Hannah Montana: Rock the Waves"); *Metrano v. Twentieth Century Fox Film Corp.*, 2009 WL 10672576, at *4-5 (C.D. Cal. July 16, 2009) (granting motion to dismiss Lanham Act claim based on use of excerpts of plaintiff's well-known comedy routine in film *Stewie Griffin: The Untold Story*).

### a.    The Alleged Use Is Artistically Relevant.

"The threshold for 'artistic relevance' is purposely low and will be satisfied unless the use 'has *no* artistic relevance to the underlying work *whatsoever*.'"  *Louis Vuitton*, 868 F. Supp. 2d at 178 (quoting *Rogers*, 875 F.2d at 999); *see also E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008) (under *Rogers*, "level of relevance merely must be above zero").  Here, the phrase "Choose Your Own Adventure" is artistically relevant to the film because its plot involves the protagonist's efforts to convert the book "Bandersnatch" into a videogame, and the storytelling structure of the film mirrors the fictional storytelling structure of the book and videogame.  The first element of *Rogers* is thus easily satisfied.

### b.    The Alleged Use Is Not Explicitly Misleading.

A work is not "explicitly misleading" absent an "explicit indication," "overt claim," or "explicit misstatement" that causes consumer confusion.  *Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192, 1199 (9th Cir. 2017), *cert. denied*, 139 S. Ct. 61 (2018).  Thus, the relevant question is whether the challenged use "is misleading in the sense that it induces members of the public to believe [the work] was prepared or otherwise authorized by" Chooseco.  *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993).

To establish that a work is "explicitly misleading," courts in this Circuit require a plaintiff to demonstrate a "particularly compelling" likelihood of consumer confusion in order to overcome the weighty First Amendment interests at stake.  *Id.*  "In the context of a motion to dismiss, courts have disposed of trademark claims where simply looking at the work itself, and the context in which it appears, demonstrates how implausible it is that a viewer will be confused into believing that the plaintiff endorsed the defendant's work."  *Louis Vuitton*, 868 F. Supp. 2d

at 183.  Where, as here, the complaint fails to plead any plausible theory of consumer confusion, much less a "particularly compelling" case, dismissal is warranted.

In *Arrow Productions, Ltd. v. The Weinstein Co.*, 44 F. Supp. 3d 359, 373 (S.D.N.Y. 2014), for instance, the court granted judgment on the pleadings in a Lanham Act case arising out of the film *Lovelace*, where the owner of the marks LINDA LOVELACE and DEEP THROAT sued over the film's title and its repeated use of the phrase "Deep Throat" in dialogue. The court rejected those claims, explaining that the plaintiff had "only set forth conclusory allegations of confusion" and had "not set forth any reasons as to *why* consumers would believe that plaintiff was involved in the production." *Id.* (emphasis added); *see also Medina*, 2016 WL 3906714, at *5 (granting motion to dismiss where complaint was "devoid of concrete allegations that defendants attempted to suggest that [plaintiff] produced the work"); *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 635-36 (S.D.N.Y. 2008) (dismissing trademark claims where plaintiff failed to plead any plausible theory of consumer confusion).[6]

Chooseco has likewise failed to plead any plausible theory of consumer confusion. Instead, it offers only the conclusory assertion that, "[u]pon information and belief, Bandersnatch viewers have already been confused about the film's association with the film and are likely to be confused in the future."  Am. Compl. ¶ 40.  An unvarnished allegation "upon information and

---

[6] Although likelihood of confusion is generally analyzed by applying the factors first articulated in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), the Second Circuit has stressed that a court may rule on the "ultimate question" of whether consumers are likely to be confused without explicit consideration of each factor.  *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000).  That is particularly true in the context of creative works like *Bandersnatch*, given that "[t]he *Polaroid* test has its origin in cases of purely commercial exploitation, which do not raise First Amendment concerns," and is therefore an "awkward" fit for analyzing expressive works.  *Cliffs Notes*, 886 F.2d at 495 n.3 *see also Louis Vuitton*, 868 F. Supp. 2d at 183 (courts have routinely "disposed of trademark claims" in this context "without relying on the likelihood of confusion factors to do so").  Nevertheless, as demonstrated in Part I.A.3. *infra*, even if it were necessary to analyze the *Polaroid* factors, they confirm that there is no likelihood of consumer confusion in this case.

belief" is, without more, plainly insufficient to state a claim.  *See, e.g.*, *Arrow Prods.*, 44 F. Supp. 3d at 373 ("conclusory allegations" insufficient to state claim, even where plaintiff's marks were used in title and throughout film); *Iqbal*, 556 U.S. at 678 (a complaint cannot avoid dismissal if it contains only "naked assertion[s]" devoid of "further factual enhancement") (citations omitted).

The closest Chooseco comes to articulating a theory of consumer confusion is its allegation that "Netflix intentionally and willfully used Chooseco's famous mark in order to benefit from the positive association with – and nostalgia for – the brand by adults who read the series as youngsters."  Am. Compl. ¶¶ 39, 48.  Even accepting that (dubious) interpretation of what the reference to "Choose Your Own Adventure" was intended to accomplish, a party does not have the right to prevent its trademark from being used to evoke nostalgia or situate a narrative within a particular time and place.  Rather, a "trademark owner's rights are violated *only* where the unauthorized use has a substantial capacity to mislead consumers (or other concerned actors in the marketplace) into a confusion *as to the entity furnishing the goods or services*."  *Yankee Publ'g*, 809 F. Supp. at 273 (emphasis added).  Because the use at issue does not identify the source of the film or the streaming service, and is instead used within the film "to entertain" or "to comment and entertain," it is protected.  *Deere*, 41 F.3d at 44.

Nor is there anything in *Bandersnatch* that *could* support a plausible theory of consumer confusion.  The film's opening credits and its marketing both prominently display Netflix's own trademark and identify the film as a part of Netflix's well-known *Black Mirror* anthology – including in the title of the film, *Black Mirror: Bandersnatch*.  To access the film, a viewer must subscribe to Netflix, further confirming for viewers that Netflix is its source.  *Bandersnatch* itself includes a storyline that revolves around its protagonist learning that he is being controlled by Netflix viewers, and an ending in which a Netflix programmer is shown creating the program.  In

contrast to the way in which Netflix's mark is used, it is fanciful to suggest that the fleeting use of the phrase "Choose Your Own Adventure" in a single scene somehow signifies that Chooseco is the source of, or affiliated with, the film or Netflix's streaming service.  *See Gottlieb*, 590 F. Supp. 2d at 635 (granting motion to dismiss Lanham Act claim based on use of Gottlieb pinball machine in film *What Women Want* where "no viewer of the Film would consider whether Paramount sponsored the pinball machine or Gottlieb sponsored the Film") (citation omitted); *Yankee Publ'g*, 809 F. Supp. at 273 (no confusion where "context or manner of the use does not suggest that the trademark is being used to indicate source or origin of publication").

### 2. Netflix's Use of the Phrase is a Descriptive Fair Use and Therefore Non-Actionable.

Chooseco's trademark claims also fail for the separate and independent reason that Chooseco cannot prevent Netflix from using "Choose Your Own Adventure" to *describe* its fictitious book (or, for that matter, to describe the kind of narrative device the film employs). "The owner's rights in a mark extend only to its significance as an identifying source, *not* to the . . . descriptive meaning of a mark."  *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) (emphasis added) (citation omitted).  Thus, "the public's right to use language and imagery for descriptive purposes is not defeated by the claims of a trademark owner to exclusivity."  *Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 268 (2d Cir. 1995); *see also Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900 (9th Cir. 2002) ("[T]he trademark owner does not have the right to control public discourse whenever the public imbues his mark with a meaning beyond its source-identifying function.").  Chooseco thus cannot – under any legal theory – prevent Netflix from referring to a "Choose Your Own Adventure" book in a descriptive sense – in other words, to describe the branching storytelling technique used in the fictitious book "Bandersnatch."

This principle is codified in Section 33(b)(4) of the Lanham Act, which creates a "fair use" defense to liability for any "use, otherwise than as a mark, of . . . a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of [a] party."  15 U.S.C. § 1115(b)(4); *see also* 15 U.S.C. § 1125(c)(3)(A) (expressly excluding from trademark dilution claims "[a]ny fair use, including a . . . descriptive fair use," including "use in connection with . . . identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner").  The fair use "defense permits others to use protected marks in descriptive ways, but not as marks identifying their own products."  *Cosmetically Sealed Indus., Inc. v. Cheesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997).  To successfully assert a fair use defense, a defendant must show "that the use was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith."  *Winfrey*, 717 F.3d at 308.  Each of these elements can be established as a matter of law.  *See id.* (explaining that "fair use" defense "may be adjudicated" on a motion to dismiss "where the facts necessary to establish the defense are evident on the face of the complaint").

This case is substantially on all fours with *Naked Cowboy v. CBS*, 844 F. Supp. 2d 510 (S.D.N.Y. 2012), and *Arnold v. ABC, Inc.*, 2007 WL 210330 (S.D.N.Y. Jan. 29, 2007), each of which granted motions to dismiss trademark claims based on a finding of descriptive fair use.  In *Naked Cowboy*, the owner of the mark "NAKED COWBOY" challenged CBS's use of that phrase to label a video clip of a soap opera character wearing a cowboy hat in a state of undress.  844 F. Supp. 2d at 513-14.  The court held that CBS's use of the phrase "to describe the contents of the video clips, [and] not as a mark to identify the source," was protected as a descriptive fair use, particularly where the network prominently displayed its "own recognizable 'Eye' logo" to identify itself as the source of clip.  *Id.* at 515-16.  The court further held that CBS had not acted

in bad faith, because plaintiff had not plausibly alleged that "CBS intended to trade on the good will of [plaintiff] by creating confusion as to source or sponsorship." *Id.* at 516.

In *Arnold*, the owner of the trademark "WHAT'S YOUR PROBLEM?" sued ABC based on the use of that phrase in connection with the fictional law firm depicted in the television series *Boston Legal*. 2007 WL 210330, at *1-2. The court found the use to be a descriptive fair use and non-actionable because (a) ABC did not use the phrase "as a mark to identify or distinguish the show," but, rather, to describe the creative problem-solving skills of the fictional law firm that was the show's focus, and (b) ABC made prominent use of its own distinctive trademark to identify itself as the source of its show. *Id.* at *2-3. The court also rejected plaintiff's allegation of bad faith based on ABC's prior familiarity with the mark, because "[p]rior knowledge of a senior user's mark does not, without more, create an inference of bad faith." *Id.* at *3 (quoting *Playtex Prods., Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 166 (2d Cir. 2004)).

As in *Naked Cowboy* and *Arnold*, the use of "Choose Your Own Adventure" in *Bandersnatch* is protected as a descriptive fair use. As in *Arnold*, Chooseco's mark was used to refer to something existing only in the film's fictional universe – the book "Bandersnatch" – and, in particular, to describe its branching storytelling technique. Am. Compl. ¶¶ 30-32. And, as in both *Naked Cowboy* and *Arnold*, Chooseco has not plausibly alleged "bad faith" on Netflix's part, including because Netflix identifies itself as the brand responsible for *Bandersnatch* and the streaming service through which it is disseminated. *See Cosmetically Sealed Indus.*, 125 F.3d at 30 (a "defendant's good faith [is] evidenced by the fact that the source of the defendant's product is clearly identified by the prominent display of the defendant's own trademarks").

Chooseco nonetheless attempts to imply bad faith on Netflix's part by alleging that Netflix was aware of Chooseco's ownership of the trademark. *See* Am. Compl. ¶¶ 21-22, 33.

Specifically, Chooseco alleges that, "[b]eginning in 2016, Netflix actively pursued a license to use CHOOSE YOUR OWN ADVENTURE in connection with films and interactive cartoons." *Id.* ¶ 21.  Pointedly, Chooseco does not, and cannot, allege that these licensing negotiations concerned *Bandersnatch* – or, for that matter, any other content for adult audiences.  In any event, that Netflix may have been aware of Chooseco's trademark does not mean that, in using the phrase "Choose Your Own Adventure" in *Bandersnatch*'s dialogue, Netflix "acted with the intent relevant in trademark cases – that is, an intent to capitalize on consumer deception or hitch a free ride on plaintiff's good will."  *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425, 443 (S.D.N.Y. 2016) (no bad faith even where seller of canvas tote bags deliberately evoked Louis Vuitton's mark, because it was for purpose of satire) (citation omitted), *aff'd*, 674 F. App'x 16 (2d Cir. 2016); *see also Yankee Publ'g*, 809 F. Supp. at 275 (use of plaintiff's trademark as part of creative "commentary on the economic times" was not evidence of "attempt to misuse or abuse [plaintiff's] trademark rights").  Rather, the use is evidence only of what is plain on the face of the film – that it explores the Choose Your Own Adventure *idea*.  Because such a use is necessarily lawful, even a knowing use is not evidence of bad faith.  *See, e.g.*, *Car-Freshner*, 70 F.3d at 270 (failure to consult counsel was not bad faith where defendant was "fully entitled" to use plaintiff's mark in the manner it was used).[7]

---

[7] Chooseco also alleges that it previously sent Netflix "a written cease and desist request . . . in connection with its marketing efforts for *another television program*."  Am. Compl. ¶ 20 (emphasis added).  But "the 'failure to completely abandon the use after receiving a cease and desist letter is insufficient to support an allegation of bad faith' as a matter of law," even where, unlike here, the demand addressed the same content.  *Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 427 (S.D.N.Y. 2008) (quoting *Something Old, Something New, Inc. v. QVC, Inc.*, 1999 WL 1125063, at *7 (S.D.N.Y. Dec. 8, 1999)), *aff'd*, 329 F. App'x 333 (2d Cir. 2009); *see also Wonder Labs, Inc. v. Procter & Gamble Co.*, 728 F. Supp. 1058, 1064 (S.D.N.Y. 1990) (continued use of plaintiff's mark in face of cease and desist letter not bad faith where defendant's use of mark was protected as descriptive fair use).  Were the law otherwise, a plaintiff could bootstrap its way into a viable trademark claim simply by sending a cease and desist letter complaining about an otherwise lawful use.

Netflix's use of the phrase "Choose Your Own Adventure" is thus protected as a descriptive fair use, and Chooseco's Lanham Act claims fail as a matter of law for that reason as well.

> **3.      Applying the *Polaroid* Factors Confirms The Absence of Confusion.**

Because Chooseco has failed to plead any plausible theory of consumer confusion and because the use is obviously descriptive, there is no need for the Court to analyze each of the *Polaroid* factors to determine whether the film confused viewers as to its source or association with Chooseco.  Even if the Court were to do so, application of those factors confirms the complete absence of likely consumer confusion in this case.

**<u>First</u>**, factor one ("Strength of Plaintiff's Mark") cuts against Chooseco precisely because its trademark is strong and its brand is "popular and beloved."  Am. Compl. ¶¶ 2, 11, 16.[8] Because Chooseco associates its brand with wholesome children's adventure stories, viewers will not think that *Bandersnatch*, with its mature themes intended for adult audiences, is associated with Chooseco's products.  *See* Am. Compl. ¶ 35 (film's "dark and violent themes" are "too mature for the target audience of Chooseco's" books); *id.* ¶¶ 3, 34 (same).

---

[8] Because Chooseco has registered the CHOOSE YOUR OWN ADVENTURE mark, Netflix concedes, solely for purposes of this motion, that Chooseco has a valid trademark.  *See Reese Publ'g Co. v. Hampton Int'l Commc'ns, Inc.*, 620 F.2d 7, 11 (2d Cir. 1980) ("If a mark has been registered," plaintiff is entitled to "presumption that the mark is not generic.").  Netflix reserves the right to seek cancellation of the mark based on the substantial evidence that the phrase "Choose Your Own Adventure" has now become generic, describing "the genus of which [Chooseco's] product is a species."  *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 41 (2d Cir. 2016); *see also* 15 U.S.C. § 1064(3).  In particular, "Choose Your Own Adventure" is now widely used to describe all manner of things that involve making choices, including the entire genre of interactive fiction.  *See, e.g.*, B. Boone, *Go Your Own Way With These 5 Modern-Day Takes On Choose Your Own Adventure Books*, Barnesandnoble.com (Sept. 13, 2018), https://www.barnesandnoble.com/blog/go-your-own-way-with-these-5-modern-day-takes-on-choose-your-own-adventure-books/; C. Ahlin, *10 'Choose Your Own Adventure' Books For Adults, Because It's Way More Fun To Mess Up Your Life In Book Form*, Bustle (May 25, 2018), https://www.bustle.com/p/10-choose-your-own-adventure-books-for-adults-because-its-way-more-fun-to-mess-up-your-life-in-book-form-8962318.

This is especially so because one of *Bandersnatch's* clear purposes is to comment on, and darkly satirize, the familiar "Choose Your Own Adventure" narrative style through the lens of modern technology.  "Where the plaintiff's mark is being used as part of a jest or commentary . . . [and] both plaintiff's and defendant's marks are strong, well-recognized, and clearly associated in the consumer's mind with a particular ethic . . . confusion is avoided . . . ."  *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 503 (2d Cir. 1996) (quoting *Yankee Publ'g*, 809 F. Supp. at 273); *see also My Other Bag*, 156 F. Supp. 3d at 441 (where plaintiff's trademark is used to satirize it, strength of mark cuts against likelihood of confusion because satire works only where mark being satirized is recognizable).

**Second**, factor two ("Similarity Between the Marks") also cuts against any possible confusion.  Although Chooseco alleges that Netflix used its precise word mark, *see* Am. Compl. ¶¶ 3, 31, 33, 58, 67, 74, the proper analysis focuses on the "overall impression" created by the parties' respective uses of the marks and "the context in which they are found."  *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1993); *see also Hormel*, 73 F.3d at 503 (same).  Here, Netflix is not using the phrase as a mark and, in any event, even if it were, Chooseco's products are decidedly different from *Bandersnatch*, as Chooseco itself repeatedly emphasizes.  *See, e.g.*, Am. Compl. ¶¶ 14-15, 34-35 & Ex. B.

Even assuming that *Bandersnatch* evokes Chooseco's books, the clear purpose of the reference at issue is to comment on, and, in a sense, satirize, the "Choose Your Own Adventure" narrative structure.  As the Second Circuit has explained in the analogous context of parody, with that kind of artistic work, "there is a need to invoke the original work being parodied," even though "the primary intent" is "expression, and not commercial exploitation of another's trademark."  *Cliffs Notes*, 886 F.2d at 495.  Such works do not present any serious risk of

20

confusion, even where, unlike here, the defendant's work includes substantial references to the trademarks (and/or trade dress) of the original work. *See, e.g.*, *id.* at 494, 496-97 (spoof of *Cliffs Notes*, which "surely conjure[d] up the original and [went] to great lengths to use some of the identical colors and aspects of the cover design of Cliffs Notes," presented no substantial risk of confusion as to source); *Yankee Publ'g*, 809 F. Supp. at 273 (no material risk of consumer confusion from *New York* magazine's takeoff of *Farmer's Almanac*).

**Third**, as to factor three ("Proximity of Products"), Chooseco itself makes clear that its offerings, which are marketed to children and young adults, and *Bandersnatch*, which is marketed to mature viewers, are not competitively proximate to each other. Am. Compl. ¶¶ 14-15, 34-35; *see also Yankee Publ'g*, 809 F. Supp. at 274 (that *Farmer's Almanac* and *New York* magazine did not "vie for same customers" cut against any likelihood of confusion). Chooseco tries to plead around this factor by alleging that "[p]art of [its] marketing strategy includes appealing to adults now in their twenties, thirties, and forties, who remember the brand with pleasant nostalgia from their youth and then buy [its] books for their children." Am. Compl. ¶ 2; *see also id.* ¶ 15 (same). But that nostalgia does not mean that adults, looking for content for their children, will see the "Choose Your Own Adventure" reference in *Bandersnatch* and then mistakenly purchase Netflix subscriptions so their children can stream an indisputably adult program, and thus does not evidence any potential confusion.

**Fourth**, as to factor four ("Likelihood of Bridging the Gap"), although Chooseco alleges that it has been expanding uses of its mark into "other entertainment services, including movies," Am. Compl. ¶ 16, there is no suggestion that it intends to market "Choose Your Own Adventure" products geared toward mature audiences, *see id.* ¶¶ 17, 18, 20 (examples of current uses, all geared toward children and young adults), let alone that consumers were aware of Chooseco's

intent.  *See, e.g., Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 582 (2d Cir. 1991) ("the intent of the prior user to expand or its activities in preparation to do so, *unless known by prospective purchasers,* does not affect the likelihood of confusion") (emphasis in original).  In fact, Chooseco alleges the exact opposite in its dilution claim – namely, that associating its mark with a film like *Bandersnatch*, which is intended for mature audiences, tarnishes that mark.  *See, e.g.*, Am. Compl. ¶ 35.

**Fifth**, as to factor five ("Actual Confusion"), Chooseco has not alleged any examples of actual confusion between Chooseco's products, on the one hand, and *Bandersnatch* or Netflix's streaming service, on the other – contending only "upon information and belief" that such confusion has occurred.  Am. Compl. ¶¶ 40-41.  Instead, Chooseco alleges that "many reviews of the movie include the phrase [Choose Your Own Adventure] or even reference the book series." *Id.* ¶ 37; *see also id.* ¶ 38 (same for social media).  That reviews of *Bandersnatch* may refer to the "Choose Your Own Adventure" books is no more evidence of confusion than for a review of the film "Austin Powers" to refer to the genre of "James Bond" films.  Chooseco has not alleged that any of these reviewers or commenters was actually confused as to *Bandersnatch*'s connection to Chooseco's books, as opposed to using the idea of "choosing your own adventure" as a cultural touchpoint for reviewing the interactive nature of *Bandersnatch*.

**Sixth**, as to factor six ("Good Faith"), Chooseco's allegations are insufficient to allege bad faith for the reasons described in Part I.A.2. *supra* addressing this issue in connection with descriptive fair use.  *See EMI Catalogue*, 228 F.3d at 66 (analysis of bad faith under "descriptive fair use" test mirrors sixth *Polaroid* factor).  Thus, this factor cuts against likelihood of confusion.

**Seventh**, Chooseco has alleged no facts relevant to factor seven ("Quality of Goods"). And, even if Chooseco had alleged that Chooseco's books, Netflix's film and its streaming service are all high quality products (which is no doubt the case), those products are sufficiently different that their quality does not play any meaningful role in analyzing customer confusion. *See, e.g.*, *Hormel*, 73 F.3d at 505 (that both products at issue were high quality did not make confusion likely because products were otherwise dissimilar).

**Eighth**, although Chooseco also has not alleged any facts directly relevant to factor eight ("Sophistication of Consumers"), it admits that its purchasers are principally adults who purchase its books for their children based on "nostalgia" for having "read the books when they were young," and that *Bandersnatch* attracts a mature audience interested in "speculative fiction . . . that examines the relationship between humans and technology."  Am. Compl. ¶¶ 15, 25, 35. That level of sophistication among the relevant consumers further cuts against any likelihood of confusion.  *See, e.g.*, *Yankee Publ'g*, 809 F. Supp. at 275 (consumers for magazines at issue were sufficiently discerning as to be unlikely to be led astray by superficial similarities).

Each of the *Polaroid* factors thus confirms that the passing use of the phrase "Choose Your Own Adventure" is in no way likely to lead to confusion as to whether the film, or the Netflix service customers actually purchase, was prepared or authorized by Chooseco – much less the sufficiently "compelling" confusion required to overcome the First Amendment interests at stake.  Chooseco's Lanham Act claims should therefore be dismissed with prejudice.

### 4.    Chooseco's Dilution Claim Fails for Two Additional Reasons.

Chooseco's claim for dilution (Count II) not only fails as a matter of law under the *Rogers* test, *see* Part I.A.1 *supra*, and under 15 U.S.C. § 1125(c)(3)(A), which prohibits dilution

claims arising from a descriptive fair use, *see* Part I.A.2 *supra*, but also on two additional independent grounds.

First, although Chooseco claims that its wholesome and youth-oriented brand is tarnished through association with *Bandersnatch*, the owner of a mark does not have a claim for dilution anytime it disapproves of how its mark is used.  A claim for dilution by tarnishment requires that a plaintiff's mark be used as a mark or trade name for *defendant's* products, and that any reputational harm to plaintiff's mark flow specifically from defendant's use of that mark to refer to its *own* goods.  *See* 15 U.S.C. § 1125(c)(2)(C); 4 MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION ("MCCARTHY") § 24.122 ("[d]ilution by blurring or tarnishment could possibly occur only if the defendant uses the designation as its *own* trademark for its *own* goods or services") (emphases added).  Because *Bandersnatch* does not use the phrase "Choose Your Own Adventure" as a source-designator for the film or the Netflix service, the challenged use cannot, as a matter of law, give rise to a claim for trademark dilution.  *See, e.g.*, *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 111-12 (2d Cir. 2010) (no dilution claim where plaintiff's trademark was used to refer to plaintiff's products, not defendants'); *Allied Interstate LLC v. Kimmel & Silverman P.C.*, 2013 WL 4245987, at *4 (S.D.N.Y. Aug. 12, 2013) ("The Second Circuit does not recognize an action for dilution where the defendant uses a plaintiff's mark not to denote the defendant's goods or services, but rather to identify goods or services as those of the plaintiff.").

Second, the Lanham Act expressly exempts dilution claims based on a "*noncommercial use of a mark*" of the type at issue here.  15 U.S.C. § 1125(c)(3)(C) (emphasis added).  The "exemption expressly incorporates the concept of 'commercial' speech from the 'commercial speech' doctrine, and proscribes dilution actions that seek to enjoin use of famous marks in 'non-commercial' uses," including "artistic and expressive speech [that is] protected by the First

24

Amendment." *Mattel*, 296 F.3d at 906 (internal marks and citations omitted); *see also SMJ Grp., Inc. v. 417 Lafayette Rest. LLC*, 439 F. Supp. 2d 281, 292 (S.D.N.Y. 2006) (dilution claim requires use of trademark for sale of goods or services); MCCARTHY § 24.128 (statute does not apply to "any use of a famous mark that falls within the category of 'non-commercial' [speech] as defined by the Supreme Court").  "The 'core notion' of commercial speech is that 'which does no more than propose a commercial transaction.'"  *IMS Health Inc. v. Sorrell*, 630 F.3d 263, 274 (2d Cir. 2010) (citations omitted), *aff'd*, 564 U.S. 552 (2011).  Neither *Bandersnatch*, nor the phrase "Choose Your Own Adventure" as used in the film, proposes a commercial transaction. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 905 n.7 (9th Cir. 2010) ("Hallmark's card is not advertising the product; it is the product.  It is sold for a profit, but that does not make it commercial speech for First Amendment purposes.").  Chooseco's dilution claim thus fails as a matter of law.

### B.    Chooseco Has No Viable Claim for Infringement of its Trade Dress.

Chooseco's newly-asserted trade dress claims border on the frivolous.  As an initial matter, Chooseco only pleads a violation of its trade dress rights in connection with its claim for infringement (Count I).  *See* Am. Compl. ¶¶ 58, 62.  Because, however, Chooseco does not plead that it has registered its trade dress (it has not done so), it cannot state a claim for trade dress infringement.  *See Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 592 (E.D.N.Y. 2017) (15 U.S.C. §1114(1) "requires that a plaintiff register its trade dress to obtain relief against an alleged violator").  The trade dress aspect of Count I – the only count that includes a trade dress allegation – must therefore be dismissed.

Chooseco's trade dress claim also fail for numerous substantive reasons.  **First**, any trade dress claim is also barred by the First Amendment under *Rogers v. Grimaldi*, for the same reasons articulated in Part I.A.1 *supra*.  Although Chooseco, in an apparent attempt to avoid

*Rogers*, alleges that Netflix used the "rounded color borders" for marketing, *see* Am. Compl. ¶¶ 41-48, *Rogers* and its progeny in fact expressly apply to such promotional uses. *See, e.g.*, *Rogers*, 875 F.2d at 998 (finding film title non-actionable even though film titles "combin[e] artistic expression and commercial promotion" in a manner that is "inextricably intertwined"); *Cliffs Notes*, 886 F.2d at 495 (finding book's title and trade dress on cover non-actionable).

As a result, courts have not hesitated to confer First Amendment protection on promotional uses that are "auxiliary" to the underlying expressive work, as Chooseco concedes is the case here. *See, e.g.*, *Empire Distrib.*, 875 F.3d at 1197 (observing that "balance of First Amendment interests struck in *Rogers* . . . could be destabilized" if marks used in connection with "expressive works were protected but could not be used to promote those works"); *Lombardo v. Dr. Seuss Enters., L.P.*, 279 F. Supp. 3d 497, 514 (S.D.N.Y. 2017) (rejecting Lanham Act claim based on use of trade dress associated with Dr. Seuss books in "promotional materials" for play parodying "How the Grinch Stole Christmas!" as barred by the First Amendment), *aff'd*, 729 F. App'x 131 (2d Cir. 2018); *Cummings v. Soul Train Holdings, LLC*, 67 F. Supp. 3d 599, 606 (S.D.N.Y. 2014) (dismissing Lanham Act claim based on use of plaintiff's image in "DVD sets and promotional materials" for DVD sets on First Amendment grounds).[9] The use of "'retro' double border design," Am. Compl. ¶ 48, is relevant to the fictional 1980s setting that *Bandersnatch* creates, as well as its general immersion in the "gaming" aesthetics of that decade, *see* Factual Background, Parts B & C *supra*, and there is nothing "explicitly misleading" linking the border design to any of Chooseco's works.

---

[9] *See also, e.g.*, *Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 639 (9th Cir. 1982) (advertising that "is merely an adjunct of a protected publication and promotes only the protected publication" is entitled to level of First Amendment protection that applies to non-commercial speech); *Lane v. Random House*, 985 F. Supp. 141, 152 (D.D.C. 1995) (same for advertisement for book).

**Second**, Chooseco's trade dress claim fails for the separate and independent reason that Chooseco cannot plausibly allege that "the claimed trade dress has secondary meaning," as a trade dress claim requires. *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 F. App'x 389, 391 (2d Cir. 2003). Chooseco has not alleged any facts to suggest that its claimed trade dress has acquired such a "secondary meaning," *i.e.*, that it has assumed "primary significance" in "identif[ying] the source of the product" for the consuming public. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2d Cir. 2001). Nor could it, given the use of similar rounded borders on everything from 1980s videogame software to other famous book series.

**Third**, Chooseco's trade dress claim also fails because it does not allege that "there is a likelihood of confusion between the plaintiff's good and the defendant's." *Sherwood 48 Assocs.*, 76 F. App'x at 391. Instead, Chooseco alleges only that, "upon information and belief," the use of the rounded color borders "further contributes to the confusion about Chooseco's involvement," Am. Compl. ¶ 41, which is wholly insufficient to satisfy Chooseco's burden. *See, e.g.*, *Arrow Prods.*, 44 F. Supp. 3d at 373-74. In fact, Chooseco's borders are so different in shape than Tuckersoft's that the notion that Netflix's use would cause confusion between Netflix's offerings and Chooseco's offerings is patently absurd. *See, e.g.*, *Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1361 (7th Cir. 1995) (Posner, J.) (defendants' use of contrasting color bands on product not actionable despite plaintiff's trade dress registration of similar color band).

## II.   CHOOSECO'S COMMON LAW UNFAIR COMPETITION CLAIM FAILS AS A MATTER OF LAW.

Chooseco's tag-along claim for unfair competition under Vermont common law (Count IV) is also premised on the use of the phrase "Choose Your Own Adventure." *See, e.g.*, Am. Compl. ¶ 83 (alleging that Netflix's use of CHOOSE YOUR OWN ADVENTURE mark "permits Netflix to pass off its goods and services as those of, affiliated with, or otherwise

authorized by Chooseco"). This claim therefore fails on the same grounds as Chooseco's Lanham Act claims, for at least the following reasons:

First, "the same First Amendment considerations that limit a cause of action under the Lanham Act apply to a cause of action under [state] law." *Yankee Publ'g*, 809 F. Supp. at 282; *see also, e.g.*, *Medina*, 2016 WL 3906714, at **4, 6 (dismissing state law unfair competition claim based on application of *Rogers* because limitations on Lanham Act's application to artistic works apply equally to "its state law counterparts").[10]

Second, to prevail on its common law unfair competition claim, Chooseco must show a likelihood of consumer confusion. *See Macia v. Microsoft Corp.*, 335 F. Supp. 2d 507, 522 (D. Vt. 2004), *aff'd*, 164 F. App'x 17 (2d Cir. 2006). As demonstrated in Part I *supra*, Chooseco has not plausibly pled a likelihood of confusion, much less a "compelling" case that would overcome the First Amendment limitations applicable to artistic works.

## III.   THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

No amount of further amendment will change *Bandersnatch*'s actual uses of the phrase "Choose Your Own Adventure." Nor will amendment change the fictional "Tuckersoft" company's uses of the rounded color borders, let alone make them similar to Chooseco's. Nor will amendment alter the First Amendment protection for such artistic uses, the protection for descriptive fair uses like the use of the challenged phrase, or the absence of any secondary meaning for the rounded color borders element of Chooseco's trade dress. Where, as here,

---

[10] Moreover, the Vermont Legislature has deliberately limited common law tort claims, like Chooseco's here, that arise from "the exercise of the constitutional right of free speech." 12 Vt. Stat. Ann. § 1041(i)(1). While that statute would allow Netflix to file a separate motion to strike Chooseco's state law claim, and to seek its attorneys' fees and costs in connection therewith, in an effort to streamline these proceedings Netflix has not done so. Netflix invokes the statute here simply to illustrate that, like the First Amendment limitations described above, state law would similarly limit a common law unfair competition claim in the circumstances presented here.

amendment would be futile for such incurable reasons, dismissal with prejudice is warranted.

*See, e.g.*, *Stewart Surfboards*, 2011 WL 12877019, at *8 (denying leave to amend "because any amendment would be futile" where, based on its review of challenged book, "the Court concludes that the use of the trademark is artistically relevant and that the book contains no explicit misrepresentation that it is sponsored by or about Stewart Surfboards.  No amendment can overcome these facts.") (citation omitted); *FragranceNet.com, Inc. v. FragranceX.com, Inc.*, 493 F. Supp. 2d 545, 555 (E.D.N.Y. 2007) (denying leave to amend where "proposed amendments would be futile" as defendant did not "use" trademark, because it had not placed mark on any product, good, or service, and did not use mark to indicate source or origin).

## <u>CONCLUSION</u>

For each of the foregoing reasons, Netflix respectfully requests that this Court dismiss the Amended Complaint in its entirety with prejudice and grant such other relief as appropriate.

Dated:  March 21, 2019                      Respectfully submitted,

Robert B. Hemley, Esq.
Gravel & Shea PC
76 St. Paul St., 7th Floor, P.O. Box 369
Burlington, VT  05402-0369
Telephone: (802) 658-0220
rhemley@gravelshea.com

____/s/ *Seth D. Berlin*_____
Seth D. Berlin (admitted *pro hac vice*)
Paul Safier (admitted *pro hac vice*)
Catherine Seibel (admitted *pro hac vice*)
BALLARD SPAHR LLP
1909 K Street, N.W., 12th Floor
Washington, DC 20006-1157
Telephone: (202) 508-1122
berlins@ballardspahr.com
safierp@ballardspahr.com
seibelc@ballardspahr.com

*Counsel for Defendant Netflix, Inc.*

29