UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

CHOOSECO LLC,                          )
                                       )
        Plaintiff,                     )
                                       )
        v.                             )        Civil Action No. 2:19-cv-00008-wks
                                       )
NETFLIX, INC.,                         )
                                       )
        Defendant.                     )


**PLAINTIFF CHOOSECO LLC'S OPPOSITION TO DEFENDANT NETFLIX, INC.'S
MOTION TO DISMISS**

Shapleigh Smith, Jr., Esq.
Kendall Hoechst, Esq.
Dinse P.C.
209 Battery Street, P.O. Box 988
Burlington, VT  05402
802-864-5751
ssmith@dinse.com
khoechst@dinse.com

*Counsel for Chooseco LLC*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................................... iii

I.   FACTUAL BACKGROUND.................................................................................................... 1

II.   ARGUMENT ........................................................................................................................... 4

A.   The First Amendment does not foreclose Chooseco's pursuit of its claims........................ 4

   1.   Netflix's use of CHOOSE YOUR OWN ADVENTURE in *Bandersnatch* is explicitly
   misleading. ............................................................................................................................. 5

   2.   In the alternative, using the trademarked phrase CHOOSE YOUR OWN
   ADVENTURE is not artistically relevant to *Bandersnatch*. ................................................ 10

   3.   Discovery is needed to evaluate whether *Bandersnatch* is a purely artistic work. ........ 13

B.   Netflix has not proven it is entitled to an affirmative defense of descriptive fair use as a
matter of law. ....................................................................................................................... 14

   1.   Netflix used CHOOSE YOUR OWN ADVENTURE as a mark................................... 14

   2.   Netflix did not use CHOOSE YOUR OWN ADVENTURE in its descriptive sense.... 15

   3.   Chooseco has sufficiently alleged Netflix's bad faith.................................................... 16

C.   The *Rogers* test encompasses the ultimate question of likelihood of confusion, but even if
the Court applies the *Polaroid* factors now, Chooseco has sufficiently alleged likelihood of
confusion............................................................................................................................... 17

   1.   Factor one: strength of the mark. ................................................................................... 18

   2.   Factor two: similarity of the marks. ............................................................................... 19

   3.   Factor three: proximity of the products and their competitiveness with one another. ... 20

4.    Factor five: actual consumer confusion. ........................................................................ 20

5.    Factor six: bad faith. ..................................................................................................... 20

D.   Chooseco's dilution claim should proceed. ...................................................................... 20

1.    Netflix claims it did not use Chooseco's trademark to refer to Chooseco's goods. ...... 21

2.    Discovery is needed before the Court can evaluate whether Netflix's use of Chooseco's trademark was noncommercial. .......................................................................................... 22

E.   Chooseco's common law claims should not be dismissed. ............................................... 24

F.   At a minimum, Chooseco should be granted leave to amend. .......................................... 25

III.   CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Am. Family Life Ins. Co. v. Hagan*, 266 F. Supp. 2d 682 (N.D. Ohio 2002)................................. 22

*Arnold v. ABC, Inc.*, No. 06CIV1747GBD, 2007 WL 210330 (S.D.N.Y. Jan. 29, 2007)........... 17

*Bad Frog Brewery, Inc. v. New York State Liquor Auth.*, 134 F.3d 87 (2d Cir. 1998)................ 23

*Banker v. Moulton*, No. 2:08-cv-122, 2013 WL 5945800 (D. Vt. Nov. 6, 2013)........................... 4

*Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239 (1903)................................................. 11

*Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983) .......................................................... 23

*Boule v. Hutton*, 328 F.3d 84 (2d Cir. 2003) ........................................................................ 23, 25

*Burck v. Mars, Inc.*, 571 F. Supp. 2d 446 (S.D.N.Y. 2008)................................................... 5, 13

*Car-Freshner Corp. v. Getty Images, Inc.*, 822 F. Supp. 2d 167 (N.D.N.Y. 2011) ..................... 4

*Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267 (2d Cir. 1995) ........................... 15

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc.*, 886 F.2d 490
(2d Cir. 1989)........................................................................................................... 4, 5, 17

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 467 F. Supp. 366
(S.D.N.Y. 1979)................................................................................................................ 21

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200
(2d Cir. 1979)........................................................................................................... 7, 8, 21

*Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39 (2d Cir. 1994) ..................................................... 21

*Disney Enterprises, Inc. v. Sarelli*, 322 F. Supp. 3d 413 (S.D.N.Y. 2018) ................................ 17

*Dita, Inc. v. Mendez*, No. CV 10-6277 PSG FMOX, 2010 WL 51408553
(C.D. Cal. Dec. 14, 2010) ................................................................................................... 4

*Dryer v. Nat'l Football League*, 689 F. Supp. 2d 1113 (D. Minn. 2010).................................... 23

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095 (9th Cir. 2008).................. 6, 9

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56
(2d Cir. 2000)................................................................................................... 2, 16, 17, 20

*Estate of Barré v. Carter*, 272 F. Supp. 3d 906 (E.D. La. 2017) ................................................... 4

*Gordon v. Drape Creative, Inc.*, 909 F.3d 257 (9th Cir. 2018) ............................................... 9, 10

*Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497 (2d Cir. 1996) ........................... 19

*JA Apparel Corp. v. Abboud*, 568 F.3d 390 (2d Cir. 2009) ....................................................... 14

*Kelly-Brown v. Winfrey*, 717 F.3d 295 (2d Cir. 2013) .......................................................... 14, 16

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004) ..................... 14

*Louis Vuitton Malletier S.A. v. Warner Bros Entm't Inc.*, 868 F. Supp. 2d 172 (S.D.N.Y. 2012) . 8

*Macia v. Microsoft Corp.*, 335 F. Supp. 2d. 507 (D. Vt. 2004) .................................................. 24

*Maguire v. Gorruso*, 174 Vt. 1, 800 A.2d 1085 (2002) ............................................................. 24

*Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002) .............................................. 22

*Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402 (S.D.N.Y. 2006) ......... 18

*Naked Cowboy v. CBS*, 844 F. Supp. 2d 510 (S.D.N.Y. 2012) ................................................... 17

*Parks v. LaFace Records*, 329 F.3d 437 (6th Cir. 2003) ........................................................... 11

*Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990) ........................................................ 4, 8

*Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961) ...................... 5, 17, 18, 20

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) ....................................... 4, 5, 7, 8, 9, 10, 13, 17

*Sapieyevski v. Live Nation Worldwide, Inc.*, No. 18-830 (TJK), 2019 WL 1284302
(D.D.C. Mar. 20, 2019) ............................................................................................................. 4

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415 (9th Cir. 1984) .................... 15, 17

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97 (2d Cir. 2009) ........................... 19

*Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258 (E.D.N.Y. 2014) ............... 18

*Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208 (2d Cir. 1985) ................................................ 18

*Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010) .................................................. 21, 22

*Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366 (2d Cir. 1993) ................. 5, 17

*Vermont Motor Co. v. Monk*, 116 Vt. 309, 75 A.2d 671 (1950)...................................................... 24

*World Trade Centers Ass'n, Inc. v. Port Auth. of New York & New Jersey*, No. 15 CV 7411-LTS, 2016 WL 8292208 (S.D.N.Y. Dec. 15, 2016) ........................................................................ 18

**Statutes**

15 U.S.C. § 1125(a) ...................................................................................................... 22

15 U.S.C. § 1125(c) .......................................................................................... 20, 21, 22

**Other Authorities**

Complaint for Declaratory Relief, *ChooseCo LLC v. Lean Forward Media, LLC*, No. 1:07-cv-159 (D. Vt. July 29, 2001) ........................................................................................ 9

*DVD allows kids to control story*, The Globe & Mail (Aug. 22, 2006).......................................... 9

John Koblin, *New Coke was a Debacle.  It's Coming Back.  Blame 'Stranger Things.'*, N.Y. Times, May 21, 2019 ...................................................................................................... 6

**Rules**

Fed. R. Civ. P. 12 ............................................................................................................ 4

Caught red-handed intentionally using Chooseco's famous trademark in its interactive film *Black Mirror: Bandersnatch*, Netflix seeks to evade responsibility for its conduct by asking the Court to dismiss Chooseco's claims. Its motion offers a variety of internally inconsistent reasons why its actions do not give rise to liability, but any effort to dismiss this case on the defenses that Netflix raises—namely, that its use of Chooseco's mark is protected under the First Amendment, is merely descriptive, and is not likely to cause confusion as a matter of law—is premature given the facts alleged and the procedural posture. To rule otherwise would irreparably undermine Chooseco's ability to enforce its rights and give free reign to Netflix and other would-be infringers to use others' marks as they see fit under the guise of artistic expression. Accordingly, Netflix's motion should be denied.

## I.      FACTUAL BACKGROUND

Chooseco is the Waitsfield, Vermont-based publisher of the beloved and well-known CHOOSE YOUR OWN ADVENTURE book series. Am. Compl., ECF No. 14, ¶¶ 6, 11. It owns several federally registered trademarks that include the word mark CHOOSE YOUR OWN ADVENTURE. *Id.* ¶ 1. One example is attached as Exhibit A to Chooseco's Amended Complaint, but that is not the only valid federal registration Chooseco currently holds. Ex. A, ECF No. 14-1. There is no dispute that Chooseco owns the mark, has all attendant rights in it, and has not licensed the mark to Netflix. Am. Compl., ECF No. 14, ¶ 1, 36. Prior to the release of *Black Mirror: Bandersnatch* ("*Bandersnatch*"), Netflix had knowledge of Chooseco's trademark and the value inherent in it because it pursued a license to use the mark and underlying published materials for several years. Further, on at least one occasion, Chooseco demanded that Netflix cease and desist using the trademark in connection with marketing another television program. *Id.* ¶¶ 21-22. Netflix took down the marketing in response.

The original CHOOSE YOUR OWN ADVENTURE book series is the progenitor of interactive storytelling and one of the bestselling children's series of all time. Over 265 million CHOOSE YOUR OWN ADVENTURE books have been sold, and over 620,000 books were printed for distribution in the United States in the past year alone. *Id.* ¶ 14. While others have written and published interactive books, CHOOSE YOUR OWN ADVENTURE is the brand most consumers associate with the game book genre, especially adults who read the series when they were youngsters. *Id.* ¶¶ 15, 39. The registration included as an example to the Amended Complaint covers interactive books, videogames, and movies—as well as many other goods and services—and the Amended Complaint references some of the different types of products Chooseco has sold over the years. *Id.* ¶¶ 17-20; Ex. A, ECF No. 14-1. Interactive media is Chooseco's bread and butter, and its trademark is unequivocally associated with interactive products.

Netflix only began creating its own content in 2013, and *Bandersnatch* is one of its first forays into interactive media. Netflix and Chooseco agree that this case is not about who (if anyone) owns the "idea" of interactive storytelling. Chooseco is not claiming here that Netflix does not have the right to make films like *Bandersnatch*, but the interactive context in which Netflix used Chooseco's trademark indisputably matters.[1] *Bandersnatch* is an interactive film in which the protagonist, Stefan Butler, designs an interactive videogame based on a fictional interactive book, both of which are titled "Bandersnatch." *Id.* ¶¶ 30-34. There is no dispute that in the film's opening sequence, Butler holds up a book and states—falsely—that it **is** a "'Choose Your Own Adventure book'" as evident in the screenshot below. *Id.* ¶ 31.

---

[1] "When considering the likelihood of confusion and assessing the similarity of two marks, a court must take into account the overall context in which the marks appear and the totality of factors that could cause consumer confusion." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 66 (2d Cir. 2000).



There is also no dispute that the film contains dark and mature content intended for adults that viewers could find objectionable or disturbing. *Id.* ¶ 34. It has a rating of TV-MA, which means the content is specifically designated to be viewed by adults. *Id.* While a different context may have been a different story, the Court need only consider Netflix's actual use of Chooseco's mark.

The visual context is also relevant. This is where Chooseco's allegations about its trade dress come in.[2] Historically, its trade dress contained a double frame with two colors surrounding the illustration. Some examples are included in Paragraph 12 of the Amended Complaint. The repeated use of rounded double borders in the film and its promotion is part of the visual context that the Court must also consider when evaluating the likelihood of consumer confusion.

---

[2] Chooseco is **not** making a separate claim for infringement based on its trade dress. Nor does Chooseco claim that Netflix's use of similar rounded borders in the film and in its marketing and promotion of the film is identical to its trade dress. Rather, the visual quotation—or at least paraphrasing—of Chooseco's trade dress in context is another element that increases the likelihood of confusion, as explained in more detail below.

## II.    ARGUMENT

### A.  The First Amendment does not foreclose Chooseco's pursuit of its claims.

Netflix argues that because *Bandersnatch* is an artistic work,[3] First Amendment concerns require application of the balancing test developed in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) and its progeny.  It ignores the fact that consideration of a *Rogers* defense on a motion to dismiss is generally disfavored.  *See, e.g.*, *Sapieyevski v. Live Nation Worldwide, Inc.*, No. 18-830 (TJK), 2019 WL 1284302, at *4 (D.D.C. Mar. 20, 2019) ("[C]onsideration of the *Rogers* defense on a motion to dismiss appears to be the exception, not the rule."); *Car-Freshner Corp. v. Getty Images, Inc.*, 822 F. Supp. 2d 167, 176 n.14 (N.D.N.Y. 2011) (declining to apply the *Rogers* balancing test at the motion to dismiss stage).  This reluctance is understandable given the test "takes into account the ultimate test in trademark law, namely the likelihood of confusion as to the source of the goods in question."  *Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc.*, 886 F.2d 490, 495 (2d Cir. 1989) (internal quotation and citation omitted).  Typically, this is "a factual question, centering on the probable reactions of prospective purchasers of the parties' goods."  *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 584 (2d Cir. 1990).  A trial court may only dismiss a claim for infringement if it "is satisfied that the products or marks are so dissimilar that no question of fact is presented."[4]  *Id.*

---

[3] Chooseco agrees with Netflix that the Court may consider the film itself as necessarily incorporated by reference into the Amended Complaint.  *See* Memo. of Law in Support of Def.'s Mot. to Dismiss, ECF No. 18-1 at 9 n.1.  To the extent there is any ambiguity in how to interpret or characterize the film, the story's themes, or the visual content, however, all reasonable inferences should be resolved in Chooseco's favor.  *See, e.g.*, *Banker v. Moulton*, No. 2:08-cv-122, 2013 WL 5945800, at *4 (D. Vt. Nov. 6, 2013).

[4] Federal trial courts frequently deny motions under Fed. R. Civ. P. 12 where factual issues remain even when *Rogers*-type First Amendment concerns have been raised.  *See, e.g.*, *Estate of Barré v. Carter*, 272 F. Supp. 3d 906, 945-46 (E.D. La. 2017) (denying motion to dismiss by defendants involved in the creation and promotion of "Formation" by Beyoncé where plaintiffs

*Rogers* is not an obstacle to Chooseco's Lanham Act claim. The Lanham Act is applicable to "artistic works" "where the public interest in avoiding consumer confusion outweighs the public interest in free expression." *Rogers*, 875 F.2d at 999. Where use of a mark "has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance," but the use "explicitly misleads as to the source or the content of the work," then a claim under the Lanham Act may proceed.[5] *Id.* Discovery is needed to determine whether *Bandersnatch* is a purely artistic work, but even assuming *arguendo* that it is, Netflix has failed to establish that either prong of the test applies.

### 1. Netflix's use of CHOOSE YOUR OWN ADVENTURE in *Bandersnatch* is explicitly misleading.

"Poetic license is not without limits. The purchaser of a book, like the purchaser of a can of peas, has a right not to be misled as to the source of the product." *Rogers*, 875 F.2d at 997.

---

alleged they intentionally and willfully copied the voice and words of Anthony Barré without permission); *Dita, Inc. v. Mendez*, No. CV 10-6277 PSG FMOX, 2010 WL 5140855, at *2-3 (C.D. Cal. Dec. 14, 2010) (denying motion to dismiss where Los Angeles entertainer Dita de Leon sold tee shirts depicting herself wearing sunglasses similar to those designed by plaintiff, a high-fashion eyewear designer, where plaintiff alleged defendant intended to mislead the public); *Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 455-56 (S.D.N.Y. 2008) (denying motion for judgment on the pleadings where a Times Square performer known as The Naked Cowboy sued the maker of M&M's in connection with a billboard featuring an M&M character wearing a similar outfit).

[5] Some commentators and courts have observed that the Second Circuit's decisions in *Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc.*, 886 F.2d 490 (2d Cir. 1989) and *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366 (2d Cir. 1993), modified and relaxed the test announced in *Rogers*. For example, the *Cliffs Notes* court suggested that in the context of parody, "the *Polaroid* factors should be applied with proper weight given to First Amendment considerations." 886 F.2d at 495 n.3. Likewise, in *Twin Peaks*, the Second Circuit stated the question is whether the use of the mark is "misleading in the sense that it induced members of the public to believe the [product] was prepared or otherwise authorized" by the plaintiff, and this "determination must be made in the first instance, by application of the venerable *Polaroid* factors." 996 F.3d at 1379. However, the likelihood of confusion still "must be particularly compelling" to outweigh the First Amendment interest. *Id.* Because Netflix's use of Chooseco's trademark was explicitly misleading and had no artistic relevance, the Court need not decide whether the *Rogers* standard has been relaxed because Chooseco's allegations pass muster under even the most restrictive language in *Rogers*.

The purpose of trademark law is to "avoid confusion in the marketplace by allowing a trademark owner to prevent others from duping consumers into buying a product they mistakenly believe is sponsored by the trademark owner." *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008) (internal quotation and citation omitted). If Netflix's use of CHOOSE YOUR OWN ADVENTURE dupes consumers into mistakenly believing that Chooseco has endorsed or sponsored *Bandersnatch*, then Netflix's argument must fail.

Netflix's use of Chooseco's mark is explicitly misleading because *Bandersnatch*'s protagonist holds up a book and says "it's a 'Choose Your Own Adventure' book." Am. Compl., ECF No. 14, ¶ 31. Bandersnatch is **not** a CHOOSE YOUR OWN ADVENTURE book. Every viewer sees this first sequence, and it grounds everything that comes after—no matter what choices the viewer makes. *Id.* ¶ 33. It is hard to imagine a more explicit statement than this, but any suggestion that the phrase is used as a descriptor rather than an indication of source, sponsorship, or affiliation is belied by Netflix's subtitles. The use of capitalization and quotes in the subtitles clarifies that the character is referencing the iconic brand and is not, therefore, using the words in a descriptive sense. The film is set in 1984, the peak of CHOOSE YOUR OWN ADVENTURE books' early sales and media coverage, and the film intentionally capitalizes on the nostalgia for that era among its adult viewers by using Chooseco's trademark.[6] *Id.* ¶ 39. It is explicitly misleading to call the fictional book at the center of the *Bandersnatch* plot "a 'Choose Your Own Adventure' book" because this use explicitly and implicitly associates the film with

---

[6] Netflix is intentionally "stirring nostalgia among viewers who grew up in the Reagan years" in connection with other properties set in the 1980s in new ways. John Koblin, *New Coke was a Debacle. It's Coming Back. Blame 'Stranger Things.'*, N.Y. Times, May 21, 2019, *available at* https://www.nytimes.com/2019/05/21/business/media/new-coke-netflix-stranger-things.html. *Bandersnatch* is part of the trend of capitalizing on adults' nostalgia through intertwining content and marketing efforts.

Chooseco's mark and thus falsely creates the impression that it was used with Chooseco's permission. *Id.* ¶ 33.

Netflix asserts that it is "fanciful" to suggest that its use of Chooseco's trademark signifies that Chooseco is the source of, or affiliated with, the film or Netflix's streaming services. Memo. of Law in Support of Def.'s Mot. to Dismiss, ECF No. 18-1 at 22.[7] The Second Circuit considered and rejected a similar argument in *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200 (2d Cir. 1979). The Dallas Cowboys Cheerleaders sued a movie theater exhibiting the pornographic film *Debbie Does Dallas* because in one scene an actress wearing an outfit "almost identical" to the Dallas Cowboys Cheerleaders' uniform performed various sex acts. *Id.* at 204. The defendants argued that no reasonable person would believe that the film originated with the Cheerleaders, but the Second Circuit upheld the trial court's preliminary injunction, explaining "[i]n order to be confused, a consumer need not believe that the owner of the mark actually produced the item and placed it on the market." *Id.* Rather, "[t]he public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement." *Id.* at 205.

Although the case was decided before *Rogers*, it nevertheless sheds light on how unauthorized use of a trademark can mislead consumers in the context of a movie. *Dallas Cowboys Cheerleaders* confirms that confusion as to whether the trademark owner sponsored or approved of the use is sufficient, and that consumer confusion as to who actually created or produced a film is not necessary to find that consumers have been confused or, by extension, explicitly misled. Just as the uniform depicted in *Debbie Does Dallas* "unquestionably" brought to mind the Dallas Cowboys Cheerleaders, *id.* at 205, calling a fictional book in an interactive

---

[7] Chooseco uses the ECF page numbers as pin cites throughout this Opposition.

movie a CHOOSE YOUR OWN ADVENTURE book will bring to mind Chooseco's books because its brand is at least as inherently strong and iconic as the Cheerleaders' uniform. Furthermore, the visual and narrative context of *Bandersnatch*—including its use of capitalization and quotations in the subtitles, intentionally nostalgic "retro" setting with visual references to Chooseco's trade dress, and multiple types of interactive media referenced in the film—suggests that Chooseco approved the use of its mark in the film, just as the visual and narrative context of *Debbie Does Dallas* suggested the Dallas Cowboys Cheerleaders sponsored or approved the use of its uniform in the scene it was featured.[8]

The Second Circuit revisited *Dallas Cowboys Cheerleaders* again in *Pirone*, post *Rogers*. The *Pirone* court cited *Rogers*, but did not engage in any extensive analysis under its test because the product at issue was a calendar, and, based on the opinion, the defendant does not appear to have claimed it was an artistic work. The *Pirone* court reiterated, however, that the distinctive uniform was "a strong indication of source in which the Cheerleaders own a trademark" and, accordingly, "the public might be misled to believe that the Cheerleaders licensed defendants to use the uniform or were involved in some way with the film's production." 894 F.2d at 585. The *Pirone* court could have, but did not, distinguish *Dallas Cowboys Cheerleaders* by explaining that now, post-*Rogers*, a different standard applies to evaluate confusion in the context of visual media such as movies. Instead, it re-affirmed its prior analysis, and *Dallas Cowboys Cheerleaders* thus remains instructive here.

---

[8] *Louis Vuitton Malletier S.A. v. Warner Bros Entm't Inc.*, 868 F. Supp. 2d 172 (S.D.N.Y. 2012) is distinguishable on this basis. Louis Vuitton argued that the "explicitly misleading prong" could apply to the source or content of a **third-party's** goods, instead of the defendant's goods. *Id.* at 181 ("Louis Vuitton does not allege that Warner Bros. used the Diophy bag in order to mislead consumers into believing that Louis Vuitton produced or endorsed the Film. Therefore, the complaint fails to even allege the type of confusion that could overcome the *Rogers* protection."). Here, by contrast, Chooseco only claims that viewers will be confused into believing that it sponsored or endorsed *Bandersnatch*.

Netflix relies on a variety of trial court opinions dismissing claims of infringement where a trademark appeared in films or other artistic works. *See* Memo. of Law in Support of Def.'s Mot. to Dismiss, ECF No. 18-1 at 18 n.5, 20. But *Rogers*-type analyses are highly fact dependent. The cases relied on by Netflix are distinguishable based on their facts because in each example there was far less of a connection between the visual and narrative context of the artistic work and trademark at issue than there is here. Here, the trademark is used in a film about adapting an interactive book into an interactive video game—both of which are squarely within Chooseco's domain. Furthermore, this is not a case where Netflix's products and Chooseco's products are so different that no one could possibly confuse the two. *Cf. E.S.S. Entm't 2000*, 546 F.3d at 1100-01 ("A reasonable consumer would not think a company that owns one strip club in East Los Angeles, which is not well known to the public at large, also produces a technologically sophisticated video game like San Andreas."). Chooseco's trademark covers a variety of entertainment media—including movies—and Chooseco licenses its mark beyond simply publishing physical books. Am. Compl., ECF No. 14, ¶¶ 16-20. For example, Twentieth Century Fox (now Disney) has an option contract to develop an interactive film series based on the books, and that fact has been publicized. *Id.* ¶ 18. Chooseco previously licensed rights to its stories and its trademarks to develop interactive DVD products. *See, e.g.*, Complaint for Declaratory Relief, ¶ 7, *ChooseCo LLC v. Lean Forward Media, LLC*, No. 1:07-cv-159 (D. Vt. July 29, 2001); *DVD allows kids to control story*, The Globe & Mail (Aug. 22, 2006), *available at* https://archive.fo/20120529130905/http://www.theglobeandmail.com/servlet/ story/RTGAM.20060822.gtstory0822/BNStory/Technology/?cid=al_gam_nletter_dtechal. Both Netflix and Chooseco inhabit the same multi-media space.

The Ninth Circuit recently tested *Rogers*' "outer limits" where similar types of artistic

expressions were at issue in *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 268 (9th Cir. 2018). The *Gordon* court reversed and remanded the trial court's summary judgment order in favor of the defendants because there was a genuine issue of material fact as to whether uses of the trademarked slogans "Honey Badger Don't Care" and "Honey Badger Don't Give a Shit" in greeting cards were explicitly misleading as to their source. The Ninth Circuit explained that "in some instances, the use of a mark alone may explicitly mislead consumers about a product's source if consumers would ordinarily identify the source by the mark itself." *Id.* at 270. Further, "the potential for explicitly misleading usage is especially strong when the senior user and the junior user both use the mark in similar artistic expressions." *Id.*

Since Chooseco is the progenitor of interactive media, consumers ordinarily identify its famous brand as a source of interactive content—just as the Dallas Cowboys Cheerleaders could be identified through the visual reference to their uniform and the Honey Badger plaintiff could potentially be identified through his slogan alone. Moreover, Chooseco's claims are strengthened because Netflix used Chooseco's trademark in a context that was more likely than most to conjure up Chooseco's products through mention of the mark itself—even before it removed all doubt by quoting and capitalizing the words in the subtitles.

In short, Netflix's use of Chooseco's mark was explicitly misleading and Netflix's *Rogers* defense must fail.

## 2. In the alternative, using the trademarked phrase CHOOSE YOUR OWN ADVENTURE is not artistically relevant to *Bandersnatch*.

If the Court determines that Netflix's use of CHOOSE YOUR OWN ADVENTURE has "no artistic relevance to the underlying work whatsoever" then the First Amendment concerns are satisfied. *Rogers*, 875 F.2d at 999. In other words, if Netflix arbitrarily identified the fictional book at the center of the film as a CHOOSE YOUR OWN ADVENTURE book "just to

exploit the publicity value" of Chooseco's brand, then Netflix's First Amendment defense must fail. *Id.* at 1001.

Perhaps as Justice Holmes observed more than a hundred years ago, it is "a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of [artistic works] outside of the narrowest and most obvious limits," but Chooseco fails to see any **artistic** relevance of the use of its mark in *Bandersnatch*. *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 251 (1903). To the contrary, the mark's only role in context can be exploiting the publicity value of associating the film with Chooseco's iconic brand.

As a starting point, *Parks v. LaFace Records*, 329 F.3d 437 (6th Cir. 2003) is instructive. The Sixth Circuit considered a song by OutKast titled *Rosa Parks*. The civil rights icon sued the group under the Lanham Act, claiming use of her name was false advertising. After the trial court granted the defendants' motion for summary judgment, the Sixth Circuit considered whether the title had anything to do with the content of the song. It reversed because, ultimately, the song's "composers did *not* intend it to be about Rosa Parks, and the lyrics are *not* about Rosa Parks." *Id.* at 452. Reasonable consumers could conclude that the song was "nothing more and nothing less than a paean announcing the triumph of superior people in the entertainment business over inferior people in that business." *Id.* at 453. Choosing Rosa Parks' name rather than a title like *Back of the Bus* "unquestionably enhanced the song's potential sale to the consuming public" through the "marketing power" associated with an icon of the civil rights movement. *Id.* But "the fact that Defendants cry 'artist' and 'symbol' as reasons for appropriating Rosa Parks' name for a song title does not absolve them from potential liability for, in the words of Shakespeare, filching Rosa Parks' good name." *Id.* at 463.

Here too, Netflix has filched Chooseco's good name. Netflix thinly asserts that its use of

Chooseco's mark "is artistically relevant to the film because its plot involves the protagonist's efforts to convert the book 'Bandersnatch' into a videogame, and the storytelling structure of the film mirrors the fictional storytelling structure of the book and videogame." Memo. of Law in Support of Def.'s Mot. to Dismiss, ECF No. 18-1 at 19. This explanation confirms why the protagonist refers to the fictional book in that scene, but does not explain why Chooseco's unique brand has any artistic relevance to that scene or the film as a whole.

Netflix's arguments are muddled, perhaps, because it characterizes its use of the words CHOOSE YOUR OWN ADVENTURE in the film in a variety of ways that are inherently in tension with each other. In order for Netflix to credibly argue that its reference to Chooseco's brand was artistically relevant to the film, it would first have to admit that the scene is intentionally referencing Chooseco's brand. In other words, Netflix would have to acknowledge that it purposefully used Chooseco's trademark as a shortcut to explain that the fictional book in the film is an interactive book because consumers associate Chooseco's trademark with the genre of interactive storytelling. But admitting that it used the mark this way would undercut its other arguments that its use was not explicitly misleading and that its use was merely descriptive. Netflix cannot have it both ways.

But regardless of how Netflix characterizes its own use of the mark, the actual use has nothing to do with the underlying artistic project of *Bandersnatch* or any of its branching narrative paths. The protagonist could have used a nondescript phrase like "interactive book" or "game book" in the beginning of the film to convey the concept of an interactive story without referencing the mark itself. Alternatively, a descriptive phrase like "pick your own story," could

have described the fictional book.[9]  Given these many alternatives, Chooseco's trademark adds nothing other than "marketing power," which is not enough to make it past the first prong of the test.  If the Court agrees that Netflix's use of the mark has no artistic relevance to the film, it should deny Netflix's motion to dismiss.

### 3.  Discovery is needed to evaluate whether *Bandersnatch* is a purely artistic work.

Chooseco does not dispute that, ordinarily, films qualify as "artistic works" subject to application of the *Rogers* balancing test.  However, Chooseco submits that Netflix's motive in producing and offering *Bandersnatch* was not purely artistic.  Discovery that is exclusively in the control of Netflix is needed to fully understand whether the film is both an artistic work and a commercial work.  *Cf. Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 457 (S.D.N.Y. 2008) (evaluating whether a video and mural included both commercial and artistic aspects).  Netflix collects data on its viewers' choices within *Bandersnatch*, which it may sell in the future or use in its own marketing of other content to its subscribers or potential subscribers.  Am. Compl., ECF No. 14, ¶¶ 49-51.  It does not take much imagination to speculate how Netflix might use or sell the data it collects.  For example, the Kellogg Company might want to know which viewers chose Frosties for breakfast and which chose a competitor cereal.  *Id.* ¶ 29.  Discovery is needed to determine whether *Bandersnatch* is, at least in part, a marketing tool designed to collect behavioral information on viewers' choices.  Furthermore, Netflix may have sold product placement opportunities as a form of advertisement, which would also suggest the film is not purely artistic.

---

[9] There are many other options: select your own narrative, pick your own path, decide your own destiny, make your own tale, follow your own journey, and so on.  The sheer volume of possible alternatives compels the inference that the use was meant to invoke and free ride on the good will associated with Chooseco's brand.

As media evolves, it is worth considering whether a mix of artistic and commercial purposes should tip the balance more toward the intellectual property owner. In other words, courts applying the *Rogers* balancing test would put a slight thumb on the trademark owner's side of the scale when the work at issue is artistic in part and commercial in part.

**B. Netflix has not proven it is entitled to an affirmative defense of descriptive fair use as a matter of law.**

Netflix stresses that even if there is some question as to whether consumer confusion is likely, its use of CHOOSE YOUR OWN ADVENTURE was purely descriptive because the film "explores the Choose Your Own Adventure *idea*." Memo. of Law in Support of Def.'s Mot. to Dismiss, ECF No. 18-1 at 24. Not so.

Descriptive fair use is an affirmative defense. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118-20 (2004). In order to dismiss the Complaint at this stage, Netflix must prove as a matter of law that its use of CHOOSE YOUR OWN ADVENTURE was "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith" and the Court must be convinced that "the facts necessary to establish the defense are evident on the face of the complaint." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) (internal quotation and citation omitted). Because the Amended Complaint raises genuine disputes of material fact as to all three elements, the Court should deny Netflix's motion to dismiss on this basis as well.

**1. Netflix used CHOOSE YOUR OWN ADVENTURE as a mark.**

To determine whether Netflix used CHOOSE YOUR OWN ADVENTURE as a mark, the Court must consider whether the term was used "as a symbol to attract public attention." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 400 (2d Cir. 2009) (internal quotation and citation omitted). Chooseco submits that Netflix used its trademark exactly thus. *See* Section II.A *supra*. Netflix used the mark to benefit from the brand's popularity and copied an element of its trade

dress in its marketing to further reinforce the connection between the trademark and its film.

Am. Compl., ECF No. 14, ¶¶ 39, 41.

### 2. Netflix did not use CHOOSE YOUR OWN ADVENTURE in its descriptive sense.

The fair use defense covers words used in their "ordinary descriptive sense." *Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 269 (2d Cir. 1995). Netflix's argument that the phrase was used as a descriptor is just not plausible in light of Netflix's use of capitalization and quotation marks in its subtitles. The subtitles are powerful evidence that the use was not descriptive, but rather an intentional reference to Chooseco's iconic brand.

This case more closely resembles *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415 (9th Cir. 1984) than any of the cases relied on by Netflix. In *Sierra On-Line*, both parties created computer strategy games. The plaintiff software developer, Sierra On-Line, had a pending registration for the mark HI-RES ADVENTURE. It sued the defendant software company, Phoenix Software, to stop it from using that phrase in connection with its own high-resolution computer games. Phoenix argued fair use, but the trial court imposed a preliminary injunction forbidding the defendant from using the mark. The Ninth Circuit upheld the order, explaining that it was "not obvious" that Phoenix used the term "only to describe the product rather than to associate it with a manufacturer." *Id.* at 1423. Here too, Netflix and Chooseco's products are related but the first part of Sierra's trademark—an abbreviation of high-resolution— is even more descriptive than the first three words of Chooseco's mark, which speak directly to a consumer. The Ninth Circuit was not persuaded to apply the fair use defense and Chooseco's case is even stronger.

It is not obvious that Netflix used the trademark to describe the fictional book in *Bandersnatch* rather than to associate it with Chooseco, and reasonable doubts should be

resolved in Chooseco's favor.

### 3. Chooseco has sufficiently alleged Netflix's bad faith.

Netflix's argument must also fail because it acted in bad faith. Netflix tries to minimize Chooseco's allegations by suggesting that Chooseco has only implied that Netflix had prior knowledge of the trademark and that, without more, is not enough to plead bad faith. Chooseco has pled far more than mere prior knowledge. To the contrary, Chooseco alleges that Netflix "used the mark willfully and intentionally to capitalize on viewers' nostalgia for the original book series from the 1980s and 1990s." Am. Compl., ECF No. 14, ¶¶ 3, 39. In addition, Netflix sought a license to use the mark in another context but did not receive one. Nevertheless, it used the mark in connection with marketing efforts for another television program until Chooseco asked it to stop. These actions confirm Netflix's awareness of the value of the mark and its power on the market, and illuminate its previous motive to pay to license it. *Id.* ¶¶ 21-22. Furthermore, Netflix has benefited from its association with Chooseco's brand as evidenced by discussions in the press and social media. *Id.* ¶¶ 37-38. Chooseco has also alleged that Netflix's use of an aspect of its trade dress was an intentional choice designed to create confusion. *Id.* ¶¶ 41-48.

These allegations are sufficient to survive Netflix's motion, but even less is required than this. An allegation of a defendant's intent to trade on good will associated with a trademark, standing alone—as Chooseco has pled—is sufficient to plead bad faith. *See EMI Catalogue*, 228 F.3d at 66 ("Courts and commentators who have considered the question equate a lack of good faith with the subsequent user's intent to trade on the good will of the trademark holder by creating confusion as to source or sponsorship."). Allegations by a defendant that it did not intend to trade on the mark holder's good will "even if true, do not preclude a finding of bad

faith." *Kelly-Brown*, 717 F.3d at 313. For example, the *Sierra On-Line* court also held that the defendant's good faith was "in issue" because "its choice of the phrase 'Hi-Res Adventure' when other phrases were available could indicate an intent to trade on Sierra's good will and product identity." *Sierra On-Line*, 739 F. 2d at 1423. Here too, many other phrases were available to describe an interactive story, which is highly suggestive of bad faith. *See* Section II.A.2 *supra*; *see also EMI Catalogue*, 228 F.3d at 65 (explaining that "whether there are other terms available to describe the pertinent characteristic" is a factor in evaluating fair use).

If the Court agrees that Chooseco has plausibly alleged that Netflix's use of Chooseco's mark was "specifically designed to evoke in consumers' minds [its] renowned" trademark "in an effort to trade on [its] popularity and goodwill" then Netflix's affirmative defense must fail. *Disney Enterprises, Inc. v. Sarelli*, 322 F. Supp. 3d 413, 431 (S.D.N.Y. 2018). The cases Netflix relies on confirm this. *See Naked Cowboy v. CBS*, 844 F. Supp. 2d 510, 516 (S.D.N.Y. 2012) ("To establish bad faith, Plaintiff must show that CBS 'intended to trade on the good will of [Plaintiff] by creating confusion as to source or sponsorship.'" (*quoting Arnold v. ABC, Inc.*, No. 06CIV1747GBD, 2007 WL 210330, at *3 (S.D.N.Y. Jan. 29, 2007))).

**C. The *Rogers* test encompasses the ultimate question of likelihood of confusion, but even if the Court applies the *Polaroid* factors now, Chooseco has sufficiently alleged likelihood of confusion.**

The Second Circuit explained that its test in *Rogers* "takes into account the ultimate test in trademark law[:]" likelihood of confusion. *Cliffs Notes*, 886 F.2d at 495 (internal quotation and citation omitted). The canonical factors laid out by Judge Friendly in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961) also aim to guide courts in assessing this "ultimate test" but can be "awkward" in contexts where First Amendment concerns are raised. *Cliffs Notes*, 886 F.2d at 495 n.3. *Rogers* is, by necessity, a more demanding standard than

*Polaroid* because of the competing constitutional concerns involved. *See Twin Peaks Productions, Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1355 (2d Cir. 1993). Concluding that *Rogers* is no obstacle to Chooseco's claims is sufficient in and of itself to hold that Chooseco has adequately pled likelihood of confusion.

The Court need not necessarily consider the *Polaroid* factors—see also note 5 *supra*—but if it does, the majority of Netflix's arguments are premature at this stage without the benefit of a full factual record. *See, e.g.*, *Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 214 (2d Cir. 1985) ("The wisdom of the likelihood of confusion test lies in its recognition that each . . . case presents its own unique set of facts. Indeed, the complexities attendant to an accurate assessment . . . require that the entire panoply of elements constituting the relevant factual landscape be comprehensively examined."); *Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 267 (E.D.N.Y. 2014) ("There is no requirement that a plaintiff address the Polaroid factors in its pleading[.]" (internal quotation and citation omitted)); *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006) ("The likelihood of confusion test is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss."). The Court need not address every factor and is free to take other considerations into account. *See, e.g.*, *World Trade Centers Ass'n, Inc. v. Port Auth. of New York & New Jersey*, No. 15 CV 7411-LTS, 2016 WL 8292208, at *2 (S.D.N.Y. Dec. 15, 2016) ("It is well settled that, when applying the *Polaroid* factors to determine likelihood of confusion at a motion to dismiss stage, courts have not required all factors to be addressed in order to find adequate pleading of a likelihood of confusion.").

### 1. Factor one: strength of the mark.

Netflix concedes that Chooseco's mark is strong, but entirely misunderstands the

importance of the first factor. Memo. of Law in Support of Def.'s Mot. to Dismiss, ECF No. 18-1 at 26.[10] Netflix "ignores the rule that a strong mark [is] a factor favoring the trademark *plaintiff*." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009) (internal quotation and citation omitted); *see also Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 503 (2d Cir. 1996) ("The more deeply a plaintiff's mark is embedded in the consumer's mind, the more likely it is that the defendant's mark will conjure up the image of the plaintiff's product instead of that of the junior user."). Netflix's concession that Chooseco's mark is strong counsels against dismissal.

### 2. Factor two: similarity of the marks.

Netflix also concedes, as it must, that it used Chooseco's mark word for word in *Bandersnatch*. Nevertheless, Netflix contends that this matters not because *Bandersnatch* is dark satire for adults, while CHOOSE YOUR OWN ADVENTURE books are generally straightforward adventure stories for children. This argument is more appropriately addressed under the third factor (proximity of the products). Regardless, Chooseco disputes that the film is commentary or satire. Both are measured in the eye of the beholder—not the creator. The focus of the confusion inquiry is rightly centered on consumers' impressions of the film, not how its lawyers construe it or its makers intended it. Any ambiguity regarding the context in which the mark was used must be construed in Chooseco's favor. Viewers' beliefs are best left to a trier of fact after evidence is presented, and should not be disregarded as a matter of law based on Netflix's bald assertions.

---

[10] In fact, Netflix even vaguely threatens that the mark is so strong that it may have become generic—like aspirin or thermos. Memo. of Law in Support of Def.'s Mot. to Dismiss, ECF No. 18-1 at 19 n.8. Since Netflix is not actually arguing that the mark has become generic in its motion, the Court should not give this passing comment any consideration now.

### 3. Factor three: proximity of the products and their competitiveness with one another.

The item referenced in the film is a book.  Am. Compl., ECF No. 14, ¶ 30.  There can be no dispute that Chooseco sells books.  Plus, Chooseco has alleged, and trademark registrations confirm, that Chooseco is moving further into the movie business, which only adds to the possibility of confusion.  *Id.* ¶ 18.  Again, the focus is on whether consumers will be confused. If adult consumers are likely to be confused into believing that Chooseco was affiliated with *Bandersnatch*, it does not matter that children were not also likely to be confused.

### 4. Factor five: actual consumer confusion.

Chooseco has pled that consumers have actually been confused and references traditional and social media.  *Id.* ¶¶ 38-40.  Specific evidence or examples are not required at the pleading phase (but could be provided in discovery).

### 5. Factor six: bad faith.

The question of good faith in the context of a fair use defense is "informed by the discussion of that factor in *Polaroid*," so, by implication, the reverse is also true.  *EMI Catalogue*, 228 F.3d at 62; *see also* Section II.B.3 *supra*.  In other words, for the same reasons that Chooseco has sufficiently alleged that Netflix's use of the mark was in bad faith in connection with its arguments on fair use above, it has sufficiently alleged bad faith under this factor of the *Polaroid* test.

### D. Chooseco's dilution claim should proceed.

Chooseco's claim of dilution by tarnishment under 15 U.S.C. § 1125(c) should not be dismissed.  Under the statute, "owners of a famous mark" are entitled to relief against "another person who, at any time after the owner's mark has become famous" uses the mark in commerce in a way "that is likely to cause . . .  dilution by tarnishment of the famous mark, regardless of

the presence or absence of actual or likely confusion, of competition, or of actual economic injury." *Id.* § 1125(c)(1). Netflix does not challenge that Chooseco's mark is famous. Rather, it argues only that Netflix used Chooseco's mark to refer to Chooseco's goods and that the "noncommercial use" exemption under § 1125(c)(3)(C) applies as a matter of law. Neither argument requires dismissal of Chooseco's dilution claim.

### 1. Netflix claims it did not use Chooseco's trademark to refer to Chooseco's goods.

Tarnishment "generally arises when the plaintiff's trademark . . . is portrayed in an unwholesome or unsavory context likely to evoke unflattering thoughts about the owner's product." *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 43 (2d Cir. 1994). This causes "the trademark's reputation and commercial value" to be diminished because the "use reduces the trademark's reputation and standing in the eyes of consumers as a wholesome identifier of the owner's products or services." *Id.* Chooseco has alleged that *Bandersnatch*'s dark and disturbing content—indisputably for adults—dilutes the goodwill for and positive, wholesome associations with Chooseco's trademark and its products. Am. Compl., ECF No. 14, ¶¶ 3, 34-35, 86. Chooseco has sufficiently stated a claim for dilution by tarnishment. *Cf. Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 467 F. Supp. 366, 377 (S.D.N.Y. 1979), *aff'd*, 604 F.2d 200 (2d Cir. 1979) ("Even in the absence of confusion, the potency of a mark may be debilitated by another's use. This is the essence of dilution. Confusion leads to immediate injury, while dilution is an infection which, if allowed to spread, will inevitably destroy the advertising value of the mark." (internal quotation and citation omitted)).

The cases relied on by Netflix are distinguishable. In *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010), the Second Circuit held "there [was] no second mark or product at issue here to blur or to tarnish 'Tiffany'" because there was no attempt by eBay to make an association

between Tiffany's mark and eBay's website.  *Id.* at 112.  Tiffany was not arguing that consumer association between its mark and eBay hurt its reputation like associating CHOOSE YOUR OWN ADVENTURE with *Bandersnatch* hurts Chooseco's reputation.  Rather, Tiffany claimed that permitting sales of "Tiffany" goods on eBay that turned out to be counterfeit was the problem.  The parties agreed that eBay was using the word "Tiffany" to refer to the plaintiff's brand—whether the goods were authentic or fakes.  Here, however, Netflix is insisting that its use of the phrase CHOOSE YOUR OWN ADVENTURE was **not** meant to refer to Chooseco's mark or its brand, but rather was meant to refer to the "idea" of interactive storytelling and was merely descriptive.  Applying *Tiffany* in this case would require Netflix to concede that its use of the phrase was actually meant to refer to Chooseco's products, i.e. CHOOSE YOUR OWN ADVENTURE books, which would entirely undermine its arguments concerning infringement. Again, Netflix cannot have it both ways.

> **2.  Discovery is needed before the Court can evaluate whether Netflix's use of Chooseco's trademark was noncommercial.**

The Lanham Act excludes "[a]ny noncommercial use of a mark" from actions for dilution by tarnishment.  15 U.S.C. § 1125(c)(3)(C).  Although the phrase is not defined—and there is some scholarly debate about how to apply the exclusion—courts often import standards from commercial speech doctrine by reasoning that the exclusion was included to allay First Amendment concerns.  *See Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 906 (9th Cir. 2002) (explaining legislative history); *Am. Family Life Ins. Co. v. Hagan*, 266 F. Supp. 2d 682, 695 (N.D. Ohio 2002) (noting "when Congress passed the Federal Trademark Dilution Act . . . it used the phrase 'noncommercial use' as a somewhat inexact, shorthand reference to 'speech protected by the First Amendment'").

The Second Circuit apparently has not considered the limits of § 1125(c)(3)(C), but has imported First Amendment commercial speech doctrine into a claim under § 1125(a). *See Boule v. Hutton*, 328 F.3d 84, 92 n.7 (2d Cir. 2003). Assuming the Court will do the same here, speech need not be one hundred percent commercial in order to be considered commercial speech. The "'core notion' of commercial speech includes 'speech which does no more than propose a commercial transaction.'" *Bad Frog Brewery, Inc. v. New York State Liquor Auth.*, 134 F.3d 87, 97 (2d Cir. 1998) (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983)). But "[o]utside this so-called 'core' lie various forms of speech that combine commercial and noncommercial elements." *Id.* Whether a hybrid of commercial and noncommercial elements "is to be treated as commercial speech depends on factors such as whether the communication is an advertisement, whether the communication makes reference to a specific product, and whether the speaker has an economic motivation for the communication." *Id.* The presence of all three factors is "strong support" for concluding the speech at issue is commercial speech. *Id.*

The commercial-speech inquiry under *Bolger* is better addressed after the Court has the benefit of a complete factual record. *Cf. Dryer v. Nat'l Football League*, 689 F. Supp. 2d 1113, 1119 (D. Minn. 2010) ("[T]here are cases in which the [commercial-speech] question cannot be resolved without a developed record."). Chooseco has alleged that Netflix's motivations in including its mark in the film were purely economic, and that the film refers to one of Chooseco's most well-known products (i.e. books). Am. Compl. ¶¶ 3, 30, 39, 48. The Amended Complaint also includes allegations that Netflix intentionally used elements of Chooseco's trade dress in its promotion and marketing of the film. *Id.* ¶¶ 41, 42, 48. Discovery is needed to determine whether other marketing efforts that Netflix authorized included Chooseco's mark.

Additionally, discovery is needed to determine whether the film itself is an

advertisement.  First, product placement is increasingly commonplace.  Discovery could reveal that Netflix sold opportunities to other brands to be included in the film to advertise those products.  For example, the effect of the first scene as a whole could be an advertisement for breakfast cereals.

Second, viewing the entire film in context, the Court should give Chooseco the benefit of the doubt at this stage and conclude that *Bandersnatch* is an effort by Netflix to monetize viewers' choices.  As explained above, Netflix collects data on its viewers' choices within *Bandersnatch*, which it may sell in the future or use in its own marketing of other content to its subscribers or potential subscribers.  Am. Compl., ECF No. 14, ¶¶ 49-51.  If the film is a marketing tool designed to collect behavioral information on viewers' choices, it may qualify as commercial speech.

Netflix's arguments are premature at this stage.  The Court should evaluate this issue with the benefit of a full factual record rather than dismiss the case.

### E.  Chooseco's common law claims should not be dismissed.

Vermont "recognized a common law unfair competition claim for trade-name infringement" in *Vermont Motor Co. v. Monk*, 116 Vt. 309, 75 A.2d 671 (1950).  *Maguire v. Gorruso*, 174 Vt. 1, 3 n.1, 800 A.2d 1085, 1088 n.1 (2002).  Although the common law in the area of unfair competition has been "federalized," it has not been preempted.  *Id.*  Vermont may recognize a common law unfair competition claim for trademark disparagement.  *See Macia v. Microsoft Corp.*, 335 F. Supp. 2d. 507, 522 (D. Vt. 2004) (discussing cases recognizing the cause of action of trademark disparagement outside of Vermont).  For the same reasons that Chooseco's claims should not be dismissed under the Lanham Act, they should not be dismissed under Vermont common law.  *Id.*  Vermont has long recognized "the universal rule that whether

there is unfair competition is a question of fact." *Vermont Motor*, 116 Vt. at 312, 75 A.2d at 312.

Additionally, the Second Circuit has made clear that even "noncommercial speech may, in appropriate cases, and pursuant to other causes of action, be actionable." *Boule*, 328 F.3d at 92 n.7. In *Boule*, Circuit Judge Calabresi wrote a separate concurrence explaining and affirming this point. *Id.* at 95-96. Whether Vermont would extend an unfair competition claim to noncommercial speech is an open question. Vermont's pleading standards with respect to state law claims are extraordinarily permissive and counsel in favor of letting the unfair competition claim proceed here.

### F. At a minimum, Chooseco should be granted leave to amend.

Leave to amend is generally freely granted. Although Chooseco's claims should not be dismissed, there is no basis to dismiss them with prejudice.

## III. CONCLUSION

Chooseco has sufficiently alleged likelihood of confusion, and the First Amendment is no obstacle to its claims under the Lanham Act or Vermont common law. Netflix's other arguments are premature because discovery is needed and Chooseco's pleading is sufficient. Accordingly, for all the reasons set forth above, Chooseco respectfully requests that the Court deny Netflix's Motion to Dismiss.

DATED at Burlington, Vermont this 31st day of May, 2019.

By:   /s/ Shapleigh Smith, Jr.
        Shapleigh Smith, Jr., Esq.
        Kendall Hoechst, Esq.
        Dinse P.C.
        209 Battery Street, P.O. Box 988
        Burlington, VT  05402
        802-864-5751
        ssmith@dinse.com
        khoechst@dinse.com

        *Counsel for Chooseco LLC*