IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| CHOOSECO LLC, | ) |
|     *Plaintiff*, | ) |
| v. | ) Civil Action No. 2:19-cv-00008-WKS |
| NETFLIX, INC., | ) |
|     *Defendant*. | ) |

# REPLY MEMORANDUM OF LAW IN
# SUPPORT OF DEFENDANT'S MOTION TO DISMISS

GRAVEL & SHEA PC

Robert B. Hemley, Esq.
76 St. Paul St., 7th Floor, P.O. Box 369
Burlington, VT 05402-0369
Telephone: (802) 658-0220
rhemley@gravelshea.com

BALLARD SPAHR LLP

Seth D. Berlin (admitted *pro hac vice*)
Paul Safier (admitted *pro hac vice*)
Catherine Seibel (admitted *pro hac vice*)
1909 K Street, N.W., 12th Floor
Washington, DC 20006-1157
Telephone: (202) 508-1122
berlins@ballardspahr.com
safierp@ballardspahr.com
seibelc@ballardspahr.com

*Counsel for Defendant Netflix, Inc.*

Date: July 12, 2019

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

I.   THE FIRST AMENDMENT BARS CHOOSECO'S LANHAM ACT
     CLAIMS ........................................................................................................................1

     A.   *Bandersnatch* Is Not "Explicitly Misleading" As To Source ..................................1

     B.   The Phrase "Choose Your Own Adventure" Is Artistically Relevant .....................5

     C.   *Bandersnatch* Is An Expressive Work ...................................................................6

II.  THE USE IS PROTECTED AS A DESCRIPTIVE FAIR USE ..........................................7

III. THERE IS NO LIKELIHOOD OF CONFUSION UNDER *POLAROID* ..........................8

IV.  THE DILUTION CLAIM FAILS FOR ADDITIONAL REASONS .................................9

V.   CHOOSECO'S COMMON LAW CLAIM SHOULD ALSO BE
     DISMISSED ..................................................................................................................9

VI.  NO DISCOVERY IS NEEDED TO ADJUDICATE THIS MOTION .............................10

VII. FURTHER AMENDMENT WOULD BE FUTILE.........................................................10

CONCLUSION ....................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arnold v. ABC, Inc.*,
  2007 WL 210330 (S.D.N.Y. Jan. 29, 2007) ...................................................................7

*Arrow Productions, Ltd. v. The Weinstein Co.*,
  44 F. Supp. 3d 359 (S.D.N.Y. 2014) ............................................................................4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................................10

*Bolger v. Youngs Drug Products Corp.*,
  463 U.S. 60 (1983) .......................................................................................................6

*Burck v. Mars, Inc.*,
  571 F. Supp. 2d 446 (S.D.N.Y. 2008) ..........................................................................4

*Burgin v. NFL*,
  2014 WL 1760112 (S.D.N.Y. Apr. 30, 2014) ..............................................................7

*Burnett v. Twentieth Century Fox Film Corp.*,
  491 F. Supp. 2d 962 (C.D. Cal. 2007) .........................................................................9

*Car-Freshner Corp. v. Getty Images, Inc.*,
  822 F. Supp. 2d 167 (N.D.N.Y. 2011) .........................................................................4

*Cliff's Notes, Inc. v. Bantam Doubleday Dell Publishing Group, Inc.*,
  718 F. Supp. 1159 (S.D.N.Y. 1989) .............................................................................2

*Cummings v. Soul Train Holdings, LLC*,
  67 F. Supp. 3d 599 (S.D.N.Y. 2014) ............................................................................3

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*,
  604 F.2d 200 (2d Cir. 1979) .........................................................................................1

*Dita, Inc. v. Mendez*,
  2010 WL 5140855 (C.D. Cal. Dec. 14, 2010) .............................................................4

*Gordon v. Drape Creative, Inc.*,
  909 F.3d 257 (9th Cir. 2018) ........................................................................................4

*JA Apparel Corp. v. Abboud*,
  568 F.3d 390 (2d Cir. 2009) .........................................................................................7

*Kelly-Brown v. Winfrey*,
   717 F.3d 295 (2d Cir. 2013)..................................................................................................7

*Louis Vuitton Malletier, S.A. v. Warner Bros. Entertainment Inc.*,
   868 F. Supp. 2d 172 (S.D.N.Y. 2012) ............................................................... *passim*

*Mattel, Inc. v. Azrak-Hamway International, Inc.*,
   724 F.2d 357 (2d Cir. 1983)..................................................................................................7

*Medina v. Dash Films, Inc.*,
   2016 WL 3906714 (S.D.N.Y. July 14, 2016) ......................................................................3

*Naked Cowboy v. CBS*,
   844 F. Supp. 2d 510 (S.D.N.Y. 2012)...................................................................................7

*New Kids on the Block v. News America Publishing, Inc.*,
   971 F.2d 302 (9th Cir. 1992) ................................................................................................8

*Parks v. LaFace Records*,
   329 F.3d 437 (6th Cir. 2003) .............................................................................................2, 5

*Peter F. Gaito Architecture, LLC v. Simone Development Corp.*,
   602 F.3d 57 (2d Cir. 2010)....................................................................................................5

*Pirone v. MacMillan, Inc.*,
   894 F.2d 579 (2d Cir. 1990)..................................................................................................2

*Polaroid Corp. v. Polarad Electronics Corp.*,
   287 F.2d 492 (2d Cir. 1961)..................................................................................................8

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989)............................................................................... *passim*

*Sapieyevski v. Live Nation Worldwide, Inc.*,
   2019 WL 1284302 (D.D.C. Mar. 20, 2019)..........................................................................5

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
   739 F.2d 1415 (9th Cir. 1984) ..............................................................................................8

*Stewart Surfboards, Inc. v. Disney Book Group, LLC*,
   2011 WL 12877019 (C.D. Cal. May 11, 2011) ....................................................................5

*Syler v. Woodruff*,
   610 F. Supp. 2d 256 (S.D.N.Y. 2009)...................................................................................3

*Tiffany (NJ) Inc. v. eBay Inc.*,
   600 F.3d 93 (2d Cir. 2010)....................................................................................................9

*Trans World Metals, Inc. v. Southwire Co.*,
    769 F.2d 902 (2d Cir. 1985)..........................................................................................10

*Twentieth Century Fox Television v. Empire Distribution, Inc.*,
    875 F.3d 1192 (9th Cir. 2017) ........................................................................................6

*Twin Peaks Productions, Inc. v. Publications International, Ltd.*,
    996 F.2d 1366 (2d Cir. 1993)..........................................................................................3

*Yankee Publishing Inc. v. News America Publishing Inc.*,
    809 F. Supp. 267 (S.D.N.Y. 1992) ..................................................................................9

**Other Authorities**

U.S. Const. amend. I ............................................................................................... *passim*

In its Opposition ("Opp."), Chooseco both substantially narrows its contentions and confirms that it has no claim. Chooseco agrees that it has no rights to the "'idea' of interactive storytelling." Opp. at 2. It also wisely abandons its claim that Netflix infringed the "rounded borders" element of its trade dress, bizarrely suggesting that it had never actually advanced such a claim. *Compare* Opp. at 3 n.2 ("Chooseco is **not** making a separate claim for infringement based on its trade dress."), *with* Am. Compl. ¶ 62 (expressly alleging that "Netflix's use of . . . an element of its trade dress . . . constitutes willful and deliberate infringement of Chooseco's trademarks"); *id.* ¶¶ 41-42, 58 (same). Chooseco thus concedes that its claims arise out of a single line of dialogue in a lengthy film unambiguously identified and marketed as a Netflix product for an adult audience. Opp. at 2-3, 6, 10-11. Because no valid claims can flow from such a use, Chooseco's Amended Complaint should be dismissed with prejudice.

## I. THE FIRST AMENDMENT BARS CHOOSECO'S LANHAM ACT CLAIMS.

### A. *Bandersnatch* Is Not "Explicitly Misleading" As To Source.

Chooseco alleged in both its complaints that consumers would mistakenly think that *Bandersnatch* "originates from" or "is otherwise associated with" Chooseco. Compl. ¶ 63; Am. Compl. ¶ 76; *see also id.* ¶¶ 40-41, 58 (same). It has now understandably abandoned that claim, given the utter implausibility of contending that one four-word phrase within a line of dialogue would explicitly mislead viewers into thinking that *Bandersnatch* is a Chooseco product. Opp. at 7 (disclaiming "consumer confusion as to who actually created or produced [the] film"). Instead, relying on *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200 (2d Cir. 1979) – a case decided a decade before the controlling case of *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) – Chooseco now contends that all it needs to show is that Netflix's passing use of the phrase "suggests that Chooseco approved the use of its mark in the film." Opp. at 7-8. Specifically, Chooseco contends that this snippet of dialogue might lead viewers to

1

mistakenly believe that the fictitious "Bandersnatch" book is an actual Chooseco product and, in turn, that Chooseco authorized Netflix to include that "product" in its film. *Id.* at 6-8.

Chooseco's reframing dooms its claims, which are foreclosed by *Rogers*. As Chooseco does here, Ginger Rogers argued that "some members of the public would draw the incorrect inference that [she] had some involvement with the film" *Ginger and Fred*, given its title and subject matter. *Rogers*, 875 F.2d at 1001. The Court rejected that argument, explaining that such a "risk of misunderstanding . . . is so outweighed by the interests in artistic expression as to preclude application of the Lanham Act" to artistic works unless they include an "overt indication of authorship or endorsement." *Id.* at 999-1000. This core holding of *Rogers* is fatal to Chooseco's claims in multiple ways.

First, in the wake of *Rogers*, *Dallas Cowboys* – and its focus on whether consumers perceive a use as authorized – is no longer the law for artistic works. *See, e.g.*, *Parks v. LaFace Records*, 329 F.3d 437, 450 (6th Cir. 2003) (Opp. at 11) ("the Second Circuit all but retracted its *Dallas Cowboys* decision in *Rogers*"); *Louis Vuitton Malletier, S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 180-82 (S.D.N.Y. 2012) (under *Rogers*, *Dallas Cowboys* no longer applies to "noncommercial speech" like films); *Cliff's Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp., Inc.*, 718 F. Supp. 1159, 1164 n.2 (S.D.N.Y. 1989) ("The *Rogers* Court rejected the analysis adopted in *Dallas Cowboys*"), *rev'd on other grounds*, 886 F.2d 490 (2d Cir. 1989).[1]

---

[1] Chooseco tries to rehabilitate *Dallas Cowboys* by citing to *Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990), a post-*Rogers* decision that briefly addressed *Dallas Cowboys*. Opp. at 8. As Chooseco concedes, however, *Pirone* did not involve an artistic work, *id.*, and thus says nothing about *Dallas Cowboys*' continued application to artistic works. Moreover, *Pirone* itself actually rebuts Chooseco's claims. The Court distinguished *Dallas Cowboys*, rejecting claims that using images of Babe Ruth on three pages of a baseball-themed calendar was infringing because no consumer would "reasonably believe that Ruth . . . sponsored the calendar," including where "[t]he source of the publication is clearly indicated by the numerous, prominent references to MacMillan." *Pirone*, 894 F.2d at 584-85. The same is true here.

2

Second, the "confusion" Chooseco invokes is not actionable under *Rogers*. The relevant confusion is whether *the film itself* "was prepared or otherwise authorized by" Chooseco, not whether Chooseco authorized the use of its mark *within* the film. *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993); *see also Louis Vuitton*, 868 F. Supp. 2d at 179-81 (*Rogers* requires confusion as to "source or sponsorship of the defendant's work," not just "implying" that trademark owner "approved the use" of its mark within film); *Syler v. Woodruff*, 610 F. Supp. 2d 256, 266 (S.D.N.Y. 2009) (*Rogers* requires confusion as to "source or origin of" defendant's work). The whole point of *Rogers* was to protect free expression by limiting the circumstances in which creators of expressive works need approval to use a mark to those rare situations where the use would cause confusion as to the source of the defendant's work. Chooseco's assertion that a defendant needs such permission whenever viewers might *think* it received permission is both circular and foreclosed by *Rogers*.

Third, Chooseco points to nothing "overtly" or "explicitly" misleading in Netflix's use, as required by *Rogers*. Nor could it plausibly do so, as Netflix used the phrase only in passing in a single scene to describe a fictional book; unlike Chooseco's books, *Bandersnatch* is targeted to adults; the film's themes turn the "Choose Your Own Adventure" concept on its head; and Netflix is clearly identified as the source of the film. *See, e.g.*, *Cummings v. Soul Train Holdings, LLC*, 67 F. Supp. 3d 599, 605-06 (S.D.N.Y. 2014) (dismissing Lanham Act claim based on use of plaintiff's name, likeness and voice in scene in DVD program, where plaintiff failed "to plead facts showing that Defendants *explicitly* misled consumers," particularly where defendant's marks were "prominently displayed on the DVD sets"); *Medina v. Dash Films, Inc.*, 2016 WL 3906714, at *5 (S.D.N.Y. July 14, 2016) (dismissing complaint because it was "devoid of concrete allegations that defendants attempted to suggest that [plaintiff] produced the work").

Chooseco cannot save its claim by relying on the film's "overall context," Opp. at 2 n.1 – including its branching storytelling device, "intentionally nostalgic 'retro' setting," and "visual references to Chooseco's trade dress," *id.* at 8 – to argue that viewers will think that Chooseco approved of Netflix's use of the phrase. Putting aside that Chooseco is relying on elements that it concedes are not protected by its trademarks, *id.* at 2, 3 & n.2, and is claiming the wrong kind of confusion, *id.* at 7-8, its argument is foreclosed by *Rogers* and its progeny. *See, e.g.*, *Rogers*, 875 F.2d at 1001-02 (fact that entire film was about act imitating Rogers and Astaire and Rogers' name was used in title did not make film explicitly misleading); *Arrow Prods., Ltd. v. The Weinstein Co.*, 44 F. Supp. 3d 359, 373 (S.D.N.Y. 2014) (dismissing Lanham Act claims arising from the use of LINDA LOVELACE and DEEP THROAT marks in film *Lovelace*, where the film's entire subject was the making of *Deep Throat* and its star Lovelace).[2]

Finally, Chooseco tries to buy time by asserting that *Rogers* is not properly applied on a motion to dismiss. Opp. at 4. But Chooseco admits that there are in fact numerous "opinions dismissing claims of infringement where a trademark appeared in films or other artistic works." *Id.* at 9 (citing Netflix's opening Memorandum ("Mem.")). In response to this substantial body of law, Chooseco cites decisions involving commercial products, not expressive works,[3] as well as an unpublished out-of-circuit district court order, which actually confirms that a court may "properly apply the *Rogers* test . . . on a motion to dismiss," where, as here, the claim centers on

---

[2] *Gordon v. Drape Creative, Inc.*, 909 F.3d 257 (9th Cir. 2018) (Opp. at 10), is not to the contrary. While the court concluded that defendants' use of a greeting card slogan "with minimal artistic expression of their own" could be infringing, it emphasized that, where a "mark is used as only one component of [defendant's] larger expressive creation," any concern that consumers will "be 'misled as to the source of [a] product' is generally allayed." *Id.* at 270-71 (quoting *Rogers*, 875 F.2d at 998-99).

[3] *See* Opp. at 4-5 & n.4 (citing, *inter alia*, *Car-Freshner Corp. v. Getty Images, Inc.*, 822 F. Supp. 2d 167, 176 n.4 (N.D.N.Y. 2011) (commercial photographs of air fresheners); *Dita, Inc. v. Mendez*, 2010 WL 5140855 (C.D. Cal. Dec. 14, 2010) (tee shirts); *Burck v. Mars, Inc.*, 571 F. Supp. 2d 446 (S.D.N.Y. 2008) (billboard advertising M&M candies)).

4

a use in a "video explicitly incorporated by the plaintiff in [its] complaint," *Sapieyevski v. Live Nation Worldwide, Inc.*, 2019 WL 1284302, at *4 (D.D.C. Mar. 20, 2019) (citing *Pirone*, 894 F.2d at 584). That is the precise case here, where Netflix's motion addresses a use in a film that Chooseco concedes is properly before the Court. Opp. at 4 n.3.[4]

B.  **The Phrase "Choose Your Own Adventure" Is Artistically Relevant.**

Chooseco's assertion that the phrase at issue has "no artistic relevance" to *Bandersnatch*, Opp. at 10 (quoting *Rogers*, 875 F.2d at 999), is also meritless, as Chooseco's half-hearted argument all but concedes. The degree of artistic relevance required is "purposely low," *Louis Vuitton*, 868 F. Supp. 2d at 178, especially because "courts are ill-equipped to make the artistic judgments as to precisely how important the use of a mark is to the message conveyed," *Stewart Surfboards, Inc. v. Disney Book Grp., LLC*, 2011 WL 12877019, at *5 (C.D. Cal. May 11, 2011). Chooseco's argument that Netflix fails this standard because it could have used some other phase to refer to the "Bandersnatch" book's branching narrative structure, Opp. at 12-13 & n.9, was expressly rejected in *Rogers*. *See* 875 F.2d at 998-99 (rejecting test based on whether there are "alternative means of expressing what the work is about" because such a "standard provides insufficient leeway for literary expression" and "does not sufficiently accommodate the public's interest in free expression"). The only case Chooseco cites involved the use of Rosa Parks' name as the *title* of a song which, the court concluded, had *nothing* to do with her and was thus "arbitrarily chosen just to exploit [its] publicity value." *Parks*, 329 F.3d at 452-55 (quoting

---

[4] Citing a case that has nothing to do with films or trademarks, Chooseco asserts that questions over "how to interpret or characterize the film, the story's themes, or the visual content . . . should be resolved in Chooseco's favor." Opp. at 4 n.3 (citation omitted). Here again Chooseco misstates the law. *See, e.g.*, *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (the "works themselves supersede and control contrary descriptions"); *Louis Vuitton*, 868 F. Supp. 2d at 182 (on motion to dismiss, rejecting as implausible plaintiff's interpretation of how viewers might interpret use of trademark in film).

*Rogers*, 875 F.2d at 1001). By contrast, the phrase at issue is undoubtedly connected to *Bandersnatch*, including the book and videogame that are at the center of its plot, and the branching narrative device that they – and the film itself – all employ.[5]

### C. *Bandersnatch* Is An Expressive Work.

Chooseco's argument that *Bandersnatch* is not an expressive work, and is instead "commercial speech" not entitled to protection under *Rogers*, Opp. at 13-14, is easily dismissed. Chooseco concedes, as it must, that commercial speech is limited to "speech that does no more than propose a commercial transaction." *Id.* at 22-23 (citations omitted). *Bandersnatch* clearly does not propose any commercial transaction whatsoever. Chooseco's assertion that the fact that Netflix is a for-profit business somehow converts the film into commercial speech is contrary to decades of First Amendment precedent. *See, e.g.*, *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983) (Opp. at 23) ("economic motivation" is "insufficient by itself to turn" speech in question "into commercial speech"). And, once again, Chooseco's assertion is barred by *Rogers,* which held unambiguously that, even if sold for a profit, "[m]ovies, plays, books, and songs are all indisputably works of artistic expression and deserve protection." 875 F.2d at 997-98; *see also Louis Vuitton*, 868 F. Supp. 2d at 177 (use of mark in blockbuster film was a "noncommercial" use, "placing it firmly within the purview of an 'artistic work' under *Rogers*"). The only other case Chooseco cites involved a commercial billboard for M&Ms, not a film like *Bandersnatch*. *See* Opp. at 13 (citing *Burck*, 571 F. Supp. at 455-56).

---

[5] Chooseco's claim that Netflix cannot argue that its use was both artistically relevant and a descriptive fair use, *see* Opp. at 12, is doubly wrong. First, *Rogers* does not require that an expressive work use the phrase in a trademark sense to be artistically relevant. *See Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192, 1199 (9th Cir. 2017) ("Reference to another work may be a component of artistic relevance, but it is not a prerequisite."), *cert. denied*, 139 S. Ct. 61 (2018). Second, Netflix is permitted to argue in the alternative that, even if the phrase is deemed to invoke Chooseco's books, that use is protected under *Rogers*, but, if it describes the fictional book's branching narrative device, it is protected as descriptive fair use.

Chooseco also speculates "upon information and belief" that Netflix is monetizing *Bandersnatch* by collecting data on viewers' choices, Am. Compl. ¶¶ 49-51, but cites no authority indicating that, even if Netflix were doing so, that would somehow strip the work of full First Amendment protection, *see* Opp. at 14 (suggesting only that such a change in the law "is worth considering"). Producers have long monetized expressive works by collecting audience data without transforming such works into commercial speech. *See, e.g.*, *Burgin v. NFL*, 2014 WL 1760112, at *3 (S.D.N.Y. Apr. 30, 2014) (fact that website gathers user data "for marketing purposes" did not make website commercial speech, because level of protection "must be determined by looking at the content" of speech, "not at its potential uses").

## II. THE USE IS PROTECTED AS A DESCRIPTIVE FAIR USE.

Netflix did not, as Chooseco contends, use the challenged phrase "as a symbol to attract public attention" and thus "as a mark." Opp. at 14 (quoting *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 400 (2d Cir. 2009)). In stark contrast to cases such as *JA Apparel*, in which goods were marketed using a plaintiff's mark, Netflix used the phrase in a line of dialogue within a lengthy work, never used it to market the film, and clearly identified its film as a Netflix product. That is not a use as a mark. *Compare Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) (prominent use of trademarked phrase on magazine cover and in marketing was use "as a mark"), *with Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*, 724 F.2d 357, 361 (2d Cir. 1983) (phrase not used as mark where it "was located on the package," but "in a place and manner that only the close reader would notice"), *and Naked Cowboy v. CBS*, 844 F. Supp. 2d 510, 515-16 (S.D.N.Y. 2012) (no use as mark where CBS was identified as source of video using challenged phrase).[6]

---

[6] Chooseco does not meaningfully address *Naked Cowboy* or *Arnold v. ABC, Inc.*, 2007 WL 210330 (S.D.N.Y. Jan. 29, 2007), both of which applied the descriptive fair use doctrine to expressive works in circumstances similar to those here. *See* Mem. at 16-17.

Instead, Netflix used "Choose Your Own Adventure" in a descriptive sense. It is literally used by the film's protagonist to answer a question seeking a descriptive answer – *i.e.*, why is he "always flicking backwards and forwards" in the book? Am. Compl. ¶¶ 31-32. In the sole case Chooseco cites, the phrase at issue ("Hi-Res Adventure") was on the product's *packaging*, and had not acquired a descriptive meaning beyond being a source identifier. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1419, 1423 (9th Cir. 1984); *see also New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 306 (9th Cir. 1992) (fair use buttressed where mark has acquired descriptive meaning beyond status as source identifier); Mem. at 19 n.8 (citing multiple examples of mark at issue generically referring to interactive narrative fiction).

Nor can Chooseco rely on prior dealings between the parties to allege "bad faith." Opp. at 16-17. In the trademark context, "bad faith" focuses on whether a defendant intended to create consumer "confusion as to source or sponsorship." *Id.* (citation omitted); Mem. at 17-18 & n.7 (citing cases). Chooseco no longer claims confusion as to the source of the film, *see* Part I.A. *supra*, and concedes the prior dealings involved content other than *Bandersnatch*, Mem. at 18. As such, Chooseco cannot plausibly allege bad faith here. Moreover, Chooseco sidesteps the substantial body of law confirming that a defendant's identification of itself as the source of a product, like Netflix's branding here, negates any inference of bad faith. *Id.* at 17.

### III. THERE IS NO LIKELIHOOD OF CONFUSION UNDER *POLAROID*.

Chooseco is also incorrect that it can withstand dismissal under the traditional factors used to analyze likelihood of confusion set out in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). Putting aside that Chooseco addresses only five of the eight factors, it errs by treating this as an ordinary commercial trademark infringement dispute. *Bandersnatch* is a fictional work that deliberately plays with, and subverts, its audience's expectations about interactive, branching narrative stories to produce a work that is much darker

and more mature than anything in the children's books marketed by Chooseco. Mem. at 4-5. In that context, the facts Chooseco highlights – that its mark is recognizable, that Netflix used the same words, and that both Chooseco and Netflix produce entertainment products, *see* Opp. at 18-20 – cannot add up to a likelihood of consumer confusion. *See, e.g.*, *Yankee Publ'g Inc. v. News Am. Publ'g Inc.*, 809 F. Supp. 267, 273-74 (S.D.N.Y. 1992) (no likelihood of confusion under *Polaroid* factors where plaintiff's mark was used for satire, and resulting work was marketed to different audience); *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 973 (C.D. Cal. 2007) (no likelihood that viewers would believe Carol Burnett was involved in "Family Guy" sketch poking fun at her); Mem. at 19-20 (citing additional cases).

## IV. THE DILUTION CLAIM FAILS FOR ADDITIONAL REASONS.

Chooseco does not dispute that a dilution claim requires that Netflix use Chooseco's mark as its *own* mark, Mem. at 24 (citing cases), and concedes Netflix did not do so, Opp. at 6-8. Instead, Chooseco tries to distinguish this case from *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010), which articulated that rule. Opp. at 21. But any differences are irrelevant to the key issue: whether Netflix used the mark to denote the source of its film or streaming service. Chooseco concedes that Netflix did not, asserting only that it referred to the "Bandersnatch" book as a Chooseco product. *Id.* at 7-10. Even if that were the case (and a review of the film demonstrates otherwise), it does not give rise to a claim for dilution. Mem. at 24 (citing cases).

Chooseco also concedes that only commercial speech may support a dilution claim. Opp. at 22. As explained in Part I.C. *supra*, the film is not commercial speech as a matter of law.

## V. CHOOSECO'S COMMON LAW CLAIM SHOULD ALSO BE DISMISSED.

Chooseco concedes that its Vermont unfair competition claim rests on the same grounds as its Lanham Act claims and does not dispute that it is subject to the same limitations, including those imposed under the First Amendment. Opp. at 24. Chooseco cites no authority indicating

9

that Vermont courts would extend common law unfair competition claims to "noncommercial speech," *id.* at 25, even assuming such an extension would be constitutional in these circumstances, and this Court is otherwise without power to "extend the application of . . . state law." *Trans World Metals, Inc. v. Southwire Co.*, 769 F.2d 902, 908 (2d Cir. 1985). Chooseco's common law unfair competition claim should also be dismissed.

## VI.  NO DISCOVERY IS NEEDED TO ADJUDICATE THIS MOTION.

In a last ditch effort to avoid dismissal, Chooseco claims that it needs discovery to determine whether *Bandersnatch* is somehow commercial speech. *See* Opp. at 5, 13, 22-24. But absent a complaint that states a valid claim, a party "is not entitled to discovery, cabined or otherwise." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). Moreover, the primary question on which Chooseco claims discovery is warranted – whether the film is an expressive work – is easily answered as a matter of law by settled precedent treating films as expressive works. *See, e.g.*, *Louis Vuitton*, 868 F. Supp. 2d at 184 (explaining that "no amount of discovery will tilt the scales in favor of the mark holder at the expense of the public's right to free expression").

## VII.  FURTHER AMENDMENT WOULD BE FUTILE.

Finally, Chooseco's naked request for a *second* opportunity to amend its complaint, Opp. at 25, should be rejected. This is not a situation in which more artful pleading might resuscitate inadequately pleaded causes of action. Rather, no viable claims could conceivably arise out of the use Chooseco is challenging. Thus, further amendment would be futile, and Chooseco's unvarnished request for leave should be denied. *See* Mem. at 28-29 (citing cases).

## CONCLUSION

For each of the foregoing reasons, and those in Netflix's opening Memorandum, Netflix respectfully requests that this Court dismiss this case in its entirety and with prejudice.

Dated: July 12, 2019

Respectfully submitted,

Robert B. Hemley, Esq.
Gravel & Shea PC
76 St. Paul St., 7th Floor, P.O. Box 369
Burlington, VT  05402-0369
Telephone: (802) 658-0220
rhemley@gravelshea.com


        /s/ *Seth D. Berlin*
Seth D. Berlin (admitted *pro hac vice*)
Paul Safier (admitted *pro hac vice*)
Catherine Seibel (admitted *pro hac vice*)
BALLARD SPAHR LLP
1909 K Street, N.W., 12th Floor
Washington, DC 20006-1157
Telephone: (202) 508-1122
berlins@ballardspahr.com
safierp@ballardspahr.com
seibelc@ballardspahr.com

*Counsel for Defendant Netflix, Inc.*